## UNITED STATES *v.* CRUIKSHANK ET AL.

1. Citizens are the members of the political community to which they belong. They are the people who compose the community, and who, in their associated capacity, have established or submitted themselves to the dominion of a government for the promotion of their general welfare and the protection of their individual as well as their collective rights. The duty of a government to afford protection is limited always by the power it possesses for that purpose.

2. There is in our political system a government of each of the several States, and a government of the United States. Each is distinct from the others, and has citizens of its own, who owe it allegiance, and whose rights, within its jurisdiction, it must protect. The same person may be at the same time a citizen of the United States and a citizen of a State; but his rights of citizenship under one of these governments will be different from those he has under the other.

3. The government of the United States, although it is, within the scope of its powers, supreme and beyond the States, can neither grant nor secure to its citizens rights or privileges which are not expressly or by implication placed under its jurisdiction. All that cannot be so granted or secured are left to the exclusive protection of the States.

4. The right of the people peaceably to assemble for lawful purposes, with the obligation on the part of the States to afford it protection, existed long before the adoption of the Constitution. The first amendment to the Constitution, prohibiting Congress from abridging the right to assemble and petition, was not intended to limit the action of the State governments in respect to their own citizens, but to operate upon the national government alone. It left the authority of the States unimpaired, added nothing to the already existing powers of the United States, and guaranteed the continuance of the right only against Congressional interference. The people, for their protection in the enjoyment of it, must, therefore, look to the States, where the power for that purpose was originally placed.

5. The right of the people peaceably to assemble, for the purpose of petitioning Congress for a redress of grievances, or for any thing else connected with the powers or duties of the national government, is an attribute of national citizenship, and, as such, under the protection of and guaranteed by the United States. The very idea of a government republican in form implies that right, and an invasion of it presents a case within the sovereignty of the United States.

6. The right to bear arms is not granted by the Constitution; neither is it in any manner dependent upon that instrument for its existence. The second amendment means no more than that it shall not be infringed by Congress, and has no other effect than to restrict the powers of the national government.

7. Sovereignty, for the protection of the rights of life and personal liberty within the respective States, rests alone with the States.

8. The fourteenth amendment prohibits a State from depriving any person of life, liberty, or property, without due process of law, and from denying to

any person within its jurisdiction the equal protection of the laws; but it adds nothing to the rights of one citizen as against another. It simply furnishes an additional guaranty against any encroachment by the States upon the fundamental rights which belong to every citizen as a member of society. The duty of protecting all its citizens in the enjoyment of an equality of rights was originally assumed by the States, and it still remains there. The only obligation resting upon the United States is to see that the States do not deny the right. This the amendment guarantees, but no more. The power of the national government is limited to the enforce-ment of this guaranty.

9. In *Minor* v. *Happersett*, 21 Wall. 178, this court decided that the Constitution of the United States has not conferred the right of suffrage upon any one, and that the United States have no voters of their own creation in the States. In *United States* v. *Reese et al., supra,* p. 214, it held that the fifteenth amendment has invested the citizens of the United States with a new con-stitutional right, which is, exemption from discrimination in the exercise of the elective franchise on account of race, color, or previous condition of servitude. The right to vote in the States comes from the States; but the right of exemption from the prohibited discrimination comes from the United States. The first has not been granted or secured by the Constitu-tion of the United States, but the last has been.

10. The counts of an indictment which charge the defendants with having banded and conspired to injure, oppress, threaten, and intimidate citizens of the United States, of African descent, therein named; and which in substance respectively allege that the defendants intended thereby to hinder and pre-vent such citizens in the free exercise and enjoyment of rights and privi-leges granted and secured to them in common with other good citizens by the constitution and laws of the United States; to hinder and prevent them in the free exercise of their right peacefully to assemble for lawful purposes; prevent and hinder them from bearing arms for lawful pur-poses; deprive them of their respective several lives and liberty of per-son without due process of law; prevent and hinder them in the free exercise and enjoyment of their several right to the full and equal benefit of the law; prevent and hinder them in the free exercise and enjoyment of their several and respective right to vote at any election to be there-after by law had and held by the people in and of the State of Louisiana, or to put them in great fear of bodily harm, and to injure and oppress them, because, being and having been in all things qualified, they had voted at an election theretofore had and held according to law by the people of said State,—do not present a case within the sixth section of the En-forcement Act of May 31, 1870 (16 Stat. 141). To bring a case within the operation of that statute, it must appear that the right the enjoy-ment of which the conspirators intended to hinder or prevent was one granted or secured by the constitution or laws of the United States. If it does not so appear, the alleged offence is not indictable under any act of Congress.

11. The counts of an indictment which, in general language, charge the defend-ants with an intent to hinder and prevent citizens of the United States, of African descent, therein named, in the free exercise and enjoyment of the rights, privileges, immunities, and protection, granted and secured to them

respectively as citizens of the United States, and of the State of Louisiana, because they were persons of African descent, and with the intent to hinder and prevent them in the several and free exercise and enjoyment of every, each, all, and singular the several rights and privileges granted and secured to them by the constitution and laws of the United States, do not specify any particular right the enjoyment of which the conspirators intended to hinder or prevent, are too vague and general, lack the certainty and precision required by the established rules of criminal pleading, and are therefore not good and sufficient in law.

12. In criminal cases, prosecuted under the laws of the United States, the accused has the constitutional right " to be informed of the nature and cause of the accusation." The indictment must set forth the offence with clearness and all necessary certainty, to apprise the accused of the crime with which he stands charged; and every ingredient of which the offence is composed must be accurately and clearly alleged. It is an elementary principle of criminal pleading, that, where the definition of an offence, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition, but it must state the species, — it must descend to particulars. The object of the indictment is, — first, to furnish the accused with such a description of the charge against him as will enable him to make his defence, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause ; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances.

13. By the act under which this indictment was found, the crime is made to consist in the unlawful combination with an intent to prevent the enjoyment of any right granted or secured by the Constitution, &c. All rights are not so granted or secured. Whether one is so or not is a question of law, to be decided by the court. The indictment should, therefore, state the particulars, to inform the court as well as the accused. It must appear from the indictment that the acts charged will, if proved, support a conviction for the offence alleged.

ERROR to the Circuit Court of the United States for the District of Louisiana.

This was an indictment for conspiracy under the sixth section of the act of May 30, 1870, known as the Enforcement Act (16 Stat. 140), and consisted of thirty-two counts.

The *first* count was for banding together, with intent " unlawfully and feloniously to injure, oppress, threaten, and intimidate " two citizens of the United States, " of African descent and persons of color," " with the unlawful and felonious intent thereby " them " to hinder and prevent in their respective free

exercise and enjoyment of their lawful right and privilege to peaceably assemble together with each other and with other citizens of the said United States for a peaceable and lawful purpose."

The *second* avers an intent to hinder and prevent the exercise by the same persons of the "right to keep and bear arms for a lawful purpose."

The *third* avers an intent to deprive the same persons "of their respective several lives and liberty of person, without due process of law."

The *fourth* avers an intent to deprive the same persons of the "free exercise and enjoyment of the right and privilege to the full and equal benefit of all laws and proceedings for the security of persons and property" enjoyed by white citizens.

The *fifth* avers an intent to hinder and prevent the same persons "in the exercise and enjoyment of the rights, privileges, immunities, and protection granted and secured to them respectively as citizens of the said United States, and as citizens of the said State of Louisiana, by reason of and for and on account of the race and color" of the said persons.

The *sixth* avers an intent to hinder and prevent the same persons in "the free exercise and enjoyment of the several and respective right and privilege to vote at any election to be thereafter by law had and held by the people in and of the said State of Louisiana."

The *seventh* avers an intent "to put in great fear of bodily harm, injure, and oppress" the same persons, "because and for the reason" that, having the right to vote, they had voted.

The *eighth* avers an intent "to prevent and hinder" the same persons "in their several and respective free exercise and enjoyment of every, each, all, and singular the several rights and privileges granted and secured" to them "by the constitution and laws of the United States."

The next eight counts are a repetition of the first eight, except that, instead of the words "band together," the words "combine, conspire, and confederate together" are used. Three of the defendants were found guilty under the first sixteen counts, and not guilty under the remaining counts.

The parties thus convicted moved in arrest of judgment on the following grounds : —

1. Because the matters and things set forth and charged in the several counts, one to sixteen inclusive, do not constitute offences against the laws of the United States, and do not come within the purview, true intent, and meaning of the act of Congress, approved 31st May, 1870, entitled " *An Act to enforce the right of citizens of the United States,*" &c.

2. Because the matters and things in the said indictment set forth and charged do not constitute offences cognizable in the Circuit Court, and do not come within its power and jurisdiction.

3. Because the offences created by the sixth section of the act of Congress referred to, and upon which section the aforesaid sixteen counts are based, are not constitutionally within the jurisdiction of the courts of the United States, and because the matters and things therein referred to are judicially cognizable by State tribunals only, and legislative action thereon is among the constitutionally reserved rights of the several States.

4. Because the said act, in so far as it creates offences and imposes penalties, is in violation of the Constitution of the United States, and an infringement of the rights of the several States and the people.

5. Because the eighth and sixteenth counts of the indictment are too vague, general, insufficient, and uncertain, to afford the accused proper notice to plead and prepare their defence, and set forth no specific offence under the law.

6. Because the verdict of the jury against the defendants is not warranted or supported by law.

On this motion the opinions of the judges were divided, that of the presiding judge being that the several counts in question are not sufficient in law, and do not contain charges of criminal matter indictable under the laws of the United States; and that the motion in arrest of judgment should be granted. The case comes up at the instance of the United States, on certificate of this division of opinion.

Sect. 1 of the Enforcement Act declares, that all citizens of the United States, otherwise qualified, shall be allowed to vote at all elections, without distinction of race, color, or previous servitude.

Sect. 2 provides, that, if by the law of any State or Territory a prerequisite to voting is necessary, equal opportunity for it shall be given to all, without distinction, &c.; and any person charged with the duty of furnishing the prerequisite, who refuses or knowingly omits to give full effect to this section, shall be guilty of misdemeanor.

Sect. 3 provides, that an offer of performance, in respect to the prerequisite, when proved by affidavit of the claimant, shall be equivalent to performance; and any judge or inspector of election who refuses to accept it shall be guilty, &c.

Sect. 4 provides, that any person who, by force, bribery, threats, intimidation, or other unlawful means, hinders, delays, prevents, or obstructs any citizen from qualifying himself to vote, or combines with others to do so, shall be guilty, &c.

Sect. 5 provides, that any person who prevents, hinders, controls, or intimidates any person from exercising the right of suffrage, to whom it is secured by the fifteenth amendment, or attempts to do so, by bribery or threats of violence, or deprivation of property or employment, shall be guilty, &c.

The sixth section is as follows: —

" That if two or more persons shall band or conspire together, or go in disguise upon the public highway, or upon the premises of another, with intent to violate any provisions of this act, or to injure, oppress, threaten, or intimidate any citizen with intent to prevent or hinder his free exercise and enjoyment of any right or privilege granted or secured to him by the constitution or laws of the United States, or because of his having exercised the same, such persons shall be held guilty of felony, and, on conviction thereof, shall be fined or imprisoned, or both, at the discretion of the court, — the fine not to exceed $5,000, and the imprisonment not to exceed ten years; and shall, moreover, be thereafter ineligible to, and disabled from holding, any office or place of honor, profit, or trust created by the constitution or laws of the United States."

This case was argued at the October Term, 1874, by *Mr. Attorney-General Williams* and *Mr. Solicitor-General Phillips* for the plaintiff in error; and by *Mr. Reverdy Johnson, Mr. David Dudley Field, Mr. Philip Phillips,* and *Mr. R. H. Marr* for the defendants in error.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This case comes here with a certificate by the judges of the Circuit Court for the District of Louisiana that they were divided in opinion upon a question which occurred at the hearing. It presents for our consideration an indictment containing sixteen counts, divided into two series of eight counts each, based upon sect. 6 of the Enforcement Act of May 31, 1870. That section is as follows: —

"That if two or more persons shall band or conspire together, or go in disguise upon the public highway, or upon the premises of another, with intent to violate any provision of this act, or to injure, oppress, threaten, or intimidate any citizen, with intent to prevent or hinder his free exercise and enjoyment of any right or privilege granted or secured to him by the constitution or laws of the United States, or because of his having exercised the same, such persons shall be held guilty of felony, and, on conviction thereof, shall be fined or imprisoned, or both, at the discretion of the court, — the fine not to exceed $5,000, and the imprisonment not to exceed ten years; and shall, moreover, be thereafter ineligible to, and disabled from holding, any office or place of honor, profit, or trust created by the constitution or laws of the United States." 16 Stat. 141.

The question certified arose upon a motion in arrest of judgment after a verdict of guilty generally upon the whole sixteen counts, and is stated to be, whether "the said sixteen counts of said indictment are severally good and sufficient in law, and contain charges of criminal matter indictable under the laws of the United States."

The general charge in the first eight counts is that of "banding," and in the second eight, that of "conspiring" together to injure, oppress, threaten, and intimidate Levi Nelson and Alexander Tillman, citizens of the United States, of African descent and persons of color, with the intent thereby to hinder and prevent them in their free exercise and enjoyment of rights and privileges "granted and secured" to them "in common with all other good citizens of the United States by the constitution and laws of the United States."

The offences provided for by the statute in question do not consist in the mere "banding" or "conspiring" of two or

more persons together, but in their banding or conspiring with the intent, or for any of the purposes, specified.   To bring this case under the operation of the statute, therefore, it must appear that the right, the enjoyment of which the conspirators intended to hinder or prevent, was one granted or secured by the constitution or laws of the United States.   If it does not so appear, the criminal matter charged has not been made indictable by any act of Congress.

We have in our political system a government of the United States and a government of each of the several States.   Each one of these governments is distinct from the others, and each has citizens of its own who owe it allegiance, and whose rights, within its jurisdiction, it must protect.   The same person may be at the same time a citizen of the United States and a citizen of a State, but his rights of citizenship under one of these governments will be different from those he has under the other.   *Slaughter-House Cases*, 16 Wall. 74.

Citizens are the members of the political community to which they belong.   They are the people who compose the community, and who, in their associated capacity, have established or submitted themselves to the dominion of a government for the promotion of their general welfare and the protection of their individual as well as their collective rights.   In the formation of a government, the people may confer upon it such powers as they choose.   The government, when so formed, may, and when called upon should, exercise all the powers it has for the protection of the rights of its citizens and the people within its jurisdiction; but it can exercise no other.   The duty of a government to afford protection is limited always by the power it possesses for that purpose.

Experience made the fact known to the people of the United States that they required a national government for national purposes.   The separate governments of the separate States, bound together by the articles of confederation alone, were not sufficient for the promotion of the general welfare of the people in respect to foreign nations, or for their complete protection as citizens of the confederated States.   For this reason, the people of the United States, " in order to form a more perfect union, establish justice, insure domestic tranquillity, provide for

the common defence, promote the general welfare, and secure the blessings of liberty " to themselves and their posterity (Const. Preamble), ordained and established the government of the United States, and defined its powers by a constitution, which they adopted as its fundamental law, and made its rule of action.

The government thus established and defined is to some extent a government of the States in their political capacity. It is also, for certain purposes, a government of the people. Its powers are limited in number, but not in degree. Within the scope of its powers, as enumerated and defined, it is supreme and above the States; but beyond, it has no existence. It was erected for special purposes, and endowed with all the powers necessary for its own preservation and the accomplishment of the ends its people had in view. It can neither grant nor secure to its citizens any right or privilege not expressly or by implication placed under its jurisdiction.

The people of the United States resident within any State are subject to two governments: one State, and the other National; but there need be no conflict between the two. The powers which one possesses, the other does not. They are established for different purposes, and have separate jurisdictions. Together they make one whole, and furnish the people of the United States with a complete government, ample for the protection of all their rights at home and abroad. True, it may sometimes happen that a person is amenable to both jurisdictions for one and the same act. Thus, if a marshal of the United States is unlawfully resisted while executing the process of the courts within a State, and the resistance is accompanied by an assault on the officer, the sovereignty of the United States is violated by the resistance, and that of the State by the breach of peace, in the assault. So, too, if one passes counterfeited coin of the United States within a State, it may be an offence against the United States and the State: the United States, because it discredits the coin ; and the State, because of the fraud upon him to whom it is passed. This does not, however, necessarily imply that the two governments possess powers in common, or bring them into conflict with each other. It is the natural consequence of a citizenship

which owes allegiance to two sovereignties, and claims protection from both.   The citizen cannot complain, because he has voluntarily submitted himself to such a form of government. He owes allegiance to the two departments, so to speak, and within their respective spheres must pay the penalties which each exacts for disobedience to its laws.   In return, he can demand protection from each within its own jurisdiction.

The government of the United States is one of delegated powers alone.   Its authority is defined and limited by the Constitution.   All powers not granted to it by that instrument are reserved to the States or the people.   No rights can be acquired under the constitution or laws of the United States, except such as the government of the United States has the authority to grant or secure.   All that cannot be so granted or secured are left under the protection of the States.

We now proceed to an examination of the indictment, to ascertain whether the several rights, which it is alleged the defendants intended to interfere with, are such as had been in law and in fact granted or secured by the constitution or laws of the United States.

The first and ninth counts state the intent of the defendants to have been to hinder and prevent the citizens named in the free exercise and enjoyment of their "lawful right and privilege to peaceably assemble together with each other and with other citizens of the United States for a peaceful and lawful purpose."   The right of the people peaceably to assemble for lawful purposes existed long before the adoption of the Constitution of the United States.   In fact, it is, and always has been, one of the attributes of citizenship under a free government.   It "derives its source," to use the language of Chief Justice Marshall, in *Gibbons* v. *Ogden*, 9 Wheat. 211, "from those laws whose authority is acknowledged by civilized man throughout the world."   It is found wherever civilization exists.   It was not, therefore, a right granted to the people by the Constitution.   The government of the United States when established found it in existence, with the obligation on the part of the States to afford it protection.   As no direct power over it was granted to Congress, it remains, according to the ruling in *Gibbons* v. *Ogden*, id. 203, subject to State jurisdic-

tion.   Only such existing rights were committed by the people to the protection of Congress as came within the general scope of the authority granted to the national government.

The first amendment to the Constitution prohibits Congress from abridging " the right of the people to assemble and to petition the government for a redress of grievances."   This, like the other amendments proposed and adopted at the same time, was not intended to limit the powers of the State governments in respect to their own citizens, but to operate upon the National government alone.   *Barron* v. *The City of Baltimore,* 7 Pet. 250 ; *Lessee of Livingston* v. *Moore,* id. 551 ; *Fox* v. *Ohio,* 5 How. 434 ; *Smith* v. *Maryland,* 18 id. 76 ; *Withers* v. *Buckley,* 20 id. 90 ; *Pervear* v. *The Commonwealth,* 5 Wall. 479 ; *Twitchell* v. *The Commonwealth,* 7 id. 321 ; *Edwards* v. *Elliott,* 21 id. 557. It is now too late to question the correctness of this construction.   As was said by the late Chief Justice, in *Twitchell* v. *The Commonwealth,* 7 Wall. 325, " the scope and application of these amendments are no longer subjects of discussion here." They left the authority of the States just where they found it, and added nothing to the already existing powers of the United States.

The particular amendment now under consideration assumes the existence of the right of the people to assemble for lawful purposes, and protects it against encroachment by Congress. The right was not created by the amendment; neither was its continuance guaranteed, except as against congressional interference.   For their protection in its enjoyment, therefore, the people must look to the States.   The power for that purpose was originally placed there, and it has never been surrendered to the United States.

The right of the people peaceably to assemble for the purpose of petitioning Congress for a redress of grievances, or for any thing else connected with the powers or the duties of the national government, is an attribute of national citizenship, and, as such, under the protection of, and guaranteed by, the United States.   The very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances.   If it had been alleged in

these counts that the object of the defendants was to prevent a meeting for such a purpose, the case would have been within the statute, and within the scope of the sovereignty of the United States. Such, however, is not the case. The offence, as stated in the indictment, will be made out, if it be shown that the object of the conspiracy was to prevent a meeting for any lawful purpose whatever.

The second and tenth counts are equally defective. The right there specified is that of " bearing arms for a lawful purpose." This is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed; but this, as has been seen, means no more than that it shall not be infringed by Congress. This is one of the amendments that has no other effect than to restrict the powers of the national government, leaving the people to look for their protection against any violation by their fellow-citizens of the rights it recognizes, to what is called, in *The City of New York* v. *Miln*, 11 Pet. 139, the " powers which relate to merely municipal legislation, or what was, perhaps, more properly called internal police," " not surrendered or restrained " by the Constitution of the United States.

The third and eleventh counts are even more objectionable. They charge the intent to have been to deprive the citizens named, they being in Louisiana, " of their respective several lives and liberty of person without due process of law." This is nothing else than alleging a conspiracy to falsely imprison or murder citizens of the United States, being within the territorial jurisdiction of the State of Louisiana. The rights of life and personal liberty are natural rights of man. " To secure these rights," says the Declaration of Independence, " governments are instituted among men, deriving their just powers from the consent of the governed." The very highest duty of the States, when they entered into the Union under the Constitution, was to protect all persons within their boundaries in the enjoyment of these " unalienable rights with which they were endowed by their Creator." Sovereignty, for this purpose, rests alone with the States. It is no more the duty or within the power of the United States to punish for a conspiracy

to falsely imprison or murder within a State, than it would be to punish for false imprisonment or murder itself.

The fourteenth amendment prohibits a State from depriving any person of life, liberty, or property, without due process of law ; but this adds nothing to the rights of one citizen as against another. It simply furnishes an additional guaranty against any encroachment by the States upon the fundamental rights which belong to every citizen as a member of society. As was said by Mr. Justice Johnson, in *Bank of Columbia* v. *Okely*, 4 Wheat. 244, it secures "the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice." These counts in the indictment do not call for the exercise of any of the powers conferred by this provision in the amendment.

The fourth and twelfth counts charge the intent to have been to prevent and hinder the citizens named, who were of African descent and persons of color, in "the free exercise and enjoyment of their several right and privilege to the full and equal benefit of all laws and proceedings, then and there, before that time, enacted or ordained by the said State of Louisiana and by the United States ; and then and there, at that time, being in force in the said State and District of Louisiana aforesaid, for the security of their respective persons and property, then and there, at that time enjoyed at and within said State and District of Louisiana by white persons, being citizens of said State of Louisiana and the United States, for the protection of the persons and property of said white citizens." There is no allegation that this was done because of the race or color of the persons conspired against. When stripped of its verbiage, the case as presented amounts to nothing more than that the defendants conspired to prevent certain citizens of the United States, being within the State of Louisiana, from enjoying the equal protection of the laws of the State and of the United States.

The fourteenth amendment prohibits a State from denying to any person within its jurisdiction the equal protection of the laws ; but this provision does not, any more than the one which precedes it, and which we have just considered, add any thing

to the rights which one citizen has under the Constitution against another. The equality of the rights of citizens is a principle of republicanism. Every republican government is in duty bound to protect all its citizens in the enjoyment of this principle, if within its power. That duty was originally assumed by the States; and it still remains there. The only obligation resting upon the United States is to see that the States do not deny the right. This the amendment guarantees, but no more. The power of the national government is limited to the enforcement of this guaranty.

No question arises under the Civil Rights Act of April 9, 1866 (14 Stat. 27), which is intended for the protection of citizens of the United States in the enjoyment of certain rights, without discrimination on account of race, color, or previous condition of servitude, because, as has already been stated, it is nowhere alleged in these counts that the wrong contemplated against the rights of these citizens was on account of their race or color.

Another objection is made to these counts, that they are too vague and uncertain. This will be considered hereafter, in connection with the same objection to other counts.

The sixth and fourteenth counts state the intent of the defendants to have been to hinder and prevent the citizens named, being of African descent, and colored, " in the free exercise and enjoyment of their several and respective right and privilege to vote at any election to be thereafter by law had and held by the people in and of the said State of Louisiana, or by the people of and in the parish of Grant aforesaid." In *Minor* v. *Happersett*, 21 Wall. 178, we decided that the Constitution of the United States has not conferred the right of suffrage upon any one, and that the United States have no voters of their own creation in the States. In *United States* v. *Reese et al., supra,* p. 214, we hold that the fifteenth amendment has invested the citizens of the United States with a new constitutional right, which is, exemption from discrimination in the exercise of the elective franchise on account of race, color, or previous condition of servitude. From this it appears that the right of suffrage is not a necessary attribute of national citizenship; but that exemption from discrimination in the exercise of that right on

account of race, &c., is.   The right to vote in the States comes from the States; but the right of exemption from the prohibited discrimination comes from the United States.   The first has not been granted or secured by the Constitution of the United States; but the last has been.

Inasmuch, therefore, as it does not appear in these counts that the intent of the defendants was to prevent these parties from exercising their right to vote on account of their race, &c., it does not appear that it was their intent to interfere with any right granted or secured by the constitution or laws of the United States.   We may suspect that race was the cause of the hostility; but it is not so averred.   This is material to a description of the substance of the offence, and cannot be supplied by implication.   Every thing essential must be charged positively, and not inferentially.   The defect here is not in form, but in substance.

The seventh and fifteenth counts are no better than the sixth and fourteenth.   The intent here charged is to put the parties named in great fear of bodily harm, and to injure and oppress them, because, being and having been in all things qualified, they had voted " at an election before that time had and held according to law by the people of the said State of Louisiana, in said State, to wit, on the fourth day of November, A.D. 1872, and at divers other elections by the people of the State, also before that time had and held according to law."   There is nothing to show that the elections voted at were any other than State elections, or that the conspiracy was formed on account of the race of the parties against whom the conspirators were to act.   The charge as made is really of nothing more than a conspiracy to commit a breach of the peace within a State.   Certainly it will not be claimed that the United States have the power or are required to do mere police duty in the States.   If a State cannot protect itself against domestic violence, the United States may, upon the call of the executive, when the legislature cannot be convened, lend their assistance for that purpose.   This is a guaranty of the Constitution (art. 4, sect. 4); but it applies to no case like this.

We are, therefore, of the opinion that the first, second, third, fourth, sixth, seventh, ninth, tenth, eleventh, twelfth, fourteenth,

and fifteenth counts do not contain charges of a criminal nature made indictable under the laws of the United States, and that consequently they are not good and sufficient in law. They do not show that it was the intent of the defendants, by their conspiracy, to hinder or prevent the enjoyment of any right granted or secured by the Constitution.

We come now to consider the fifth and thirteenth and the eighth and sixteenth counts, which may be brought together for that purpose. The intent charged in the fifth and thirteenth is " to hinder and prevent the parties in their respective free exercise and enjoyment of the rights, privileges, immunities, and protection granted and secured to them respectively as citizens of the United States, and as citizens of said State of Louisiana," " for the reason that they, . . . being then and there citizens of said State and of the United States, were persons of African descent and race, and persons of color, and not white citizens thereof ; " and in the eighth and sixteenth, to hinder and prevent them " in their several and respective free exercise and enjoyment of every, each, all, and singular the several rights and privileges granted and secured to them by the constitution and laws of the United States." The same general statement of the rights to be interfered with is found in the fifth and thirteenth counts.

According to the view we take of these counts, the question is not whether it is enough, in general, to describe a statutory offence in the language of the statute, but whether the offence has here been described at all. The statute provides for the punishment of those who conspire " to injure, oppress, threaten, or intimidate any citizen, with intent to prevent or hinder his free exercise and enjoyment of any right or privilege granted or secured to him by the constitution or laws of the United States." These counts in the indictment charge, in substance, that the intent in this case was to hinder and prevent these citizens in the free exercise and enjoyment of " every, each, all, and singular " the rights granted them by the Constitution, &c. There is no specification of any particular right. The language is broad enough to cover all.

In criminal cases, prosecuted under the laws of the United States, the accused has the constitutional right " to be in-

formed of the nature and cause of the accusation." Amend. VI. In *United States* v. *Mills*, 7 Pet. 142, this was construed to mean, that the indictment must set forth the offence " with clearness and all necessary certainty, to apprise the accused of the crime with which he stands charged ; " and in *United States* v. *Cook*, 17 Wall. 174, that " every ingredient of which the offence is composed must be accurately and clearly alleged." It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, " includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition ; but it must state the species, — it must descend to particulars.    1 Arch. Cr. Pr. and Pl., 291.    The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defence, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause ; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had.    For this, facts are to be stated, not conclusions of law alone.    A crime is made up of acts and intent ; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances.

It is a crime to steal goods and chattels ; but an indictment would be bad that did not specify with some degree of certainty the articles stolen.    This, because the accused must be advised of the essential particulars of the charge against him, and the court must be able to decide whether the property taken was such as was the subject of larceny.    So, too, it is in some States a crime for two or more persons to conspire to cheat and defraud another out of his property ; but it has been held that an indictment for such an offence must contain allegations setting forth the means proposed to be used to accomplish the purpose.    This, because, to make such a purpose criminal, the conspiracy must be to cheat and defraud in a mode made criminal by statute ; and as all cheating and defrauding has not been made criminal, it is necessary for the indictment to state the means proposed, in order that the court

may see that they are in fact illegal.   *State* v. *Parker,* 43 N. H. 83 ; *State* v. *Keach,* 40 Vt. 118 ; *Alderman* v. *The People,* 4 Mich. 414 ; *State* v. *Roberts,* 34 Me. 32.   In Maine, it is an offence for two or more to conspire with the intent unlawfully and wickedly to commit any crime punishable by imprisonment in the State prison (*State* v. *Roberts*) ; but we think it will hardly be claimed that an indictment would be good under this statute, which charges the object of the conspiracy to have been " unlawfully and wickedly to commit each, every, all, and singular the crimes punishable by imprisonment in the State prison." All crimes are not so punishable. Whether a particular crime be such a one or not, is a question of law. The accused has, therefore, the right to have a specification of the charge against him in this respect, in order that he may decide whether he should present his defence by motion to quash, demurrer, or plea ; and the court, that it may determine whether the facts will sustain the indictment. So here, the crime is made to consist in the unlawful combination with an intent to prevent the enjoyment of any right granted or secured by the Constitution, &c. All rights are not so granted or secured. Whether one is so or not is a question of law, to be decided by the court, not the prosecutor. Therefore, the indictment should state the particulars, to inform the court as well as the accused. It must be made to appear — that is to say, appear from the indictment, without going further — that the acts charged will, if proved, support a conviction for the offence alleged.

But it is needless to pursue the argument further. The conclusion is irresistible, that these counts are too vague and general. They lack the certainty and precision required by the established rules of criminal pleading. It follows that they are not good and sufficient in law. They are so defective that no judgment of conviction should be pronounced upon them.

*The order of the Circuit Court arresting the judgment upon the verdict is, therefore, affirmed ; and the cause remanded, with instructions to discharge the defendants.*

MR. JUSTICE CLIFFORD dissenting.

I concur that the judgment in this case should be arrested, but for reasons quite different from those given by the court.

Power is vested in Congress to enforce by appropriate legislation the prohibition contained in the fourteenth amendment of the Constitution; and the fifth section of the Enforcement Act provides to the effect, that persons who prevent, hinder, control, or intimidate, or who attempt to prevent, hinder, control, or intimidate, any person to whom the right of suffrage is secured or guaranteed by that amendment, from exercising, or in exercising such right, by means of bribery or threats; of depriving such person of employment or occupation; or of ejecting such person from rented house, lands, or other property; or by threats of refusing to renew leases or contracts for labor; or by threats of violence to himself or family, — such person so offending shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be fined or imprisoned, or both, as therein provided.    16 Stat. 141.

Provision is also made, by sect. 6 of the same act, that, if two or more persons shall band or conspire together, or go in disguise, upon the public highway, or upon the premises of another, with intent to violate any provision of that act, or to injure, oppress, threaten, or intimidate any citizen with intent to prevent or hinder his free exercise and enjoyment of any right or privilege granted or secured to him by the constitution and laws of the United States, or because of his having exercised the same, such persons shall be deemed guilty of felony, and, on conviction thereof, shall be fined or imprisoned, or both, and be further punished as therein provided.

More than one hundred persons were jointly indicted at the April Term, 1873, of the Circuit Court of the United States for the District of Louisiana, charged with offences in violation of the provisions of the Enforcement Act.    By the record, it appears that the indictment contained thirty-two counts, in two series of sixteen counts each: that the first series were drawn under the fifth and sixth sections of the act; and that the second series were drawn under the seventh section of the same act; and that the latter series charged that the prisoners are guilty of murder committed by them in the act of violating some of the provisions of the two preceding sections of that act.

Eight of the persons named in the indictment appeared on

the 10th of June, 1874, and went to trial under the plea of not guilty, previously entered at the time of their arraignment. Three of those who went to trial — to wit, the three defendants named in the transcript — were found guilty by the jury on the first series of the counts of the indictment, and not guilty on the second series of the counts in the same indictment.

Subsequently the convicted defendants filed a motion for a new trial, which motion being overruled they filed a motion in arrest of judgment. Hearing was had upon that motion; and the opinions of the judges of the Circuit Court being opposed, the matter in difference was duly certified to this court, the question being whether the motion in arrest of judgment ought to be granted or denied.

Two only of the causes of arrest assigned in the motion will be considered in answering the questions certified: (1.) Because the matters and things set forth and charged in the several counts in question do not constitute offences against the laws of the United States, and do not come within the purview, true intent, and meaning of the Enforcement Act. (2.) Because the several counts of the indictment in question are too vague, insufficient, and uncertain to afford the accused proper notice to plead and prepare their defence, and do not set forth any offence defined by the Enforcement Act.

Four other causes of arrest were assigned; but, in the view taken of the case, it will be sufficient to examine the two causes above set forth.

Since the questions were certified into this court, the parties have been fully heard in respect to all the questions presented for decision in the transcript. Questions not pressed at the argument will not be considered; and, inasmuch as the counsel in behalf of the United States confined their arguments entirely to the thirteenth, fourteenth, and sixteenth counts of the first series in the indictment, the answers may well be limited to these counts, the others being virtually abandoned. Mere introductory allegations will be omitted as unimportant, for the reason that the questions to be answered relate to the allegations of the respective counts describing the offence.

As described in the thirteenth count, the charge is, that the

defendants did, at the time and place mentioned, combine, conspire, and confederate together, between and among themselves, for and with the unlawful and felonious intent and purpose one Levi Nelson and one Alexander Tillman, each of whom being then and there a citizen of the United States, of African descent, and a person of color, unlawfully and feloniously to injure, oppress, threaten, and intimidate, with the unlawful and felonious intent thereby the said persons of color, respectively, then and there to hinder and prevent in their respective and several free exercise and enjoyment of the rights, privileges, and immunities, and protection, granted and secured to them respectively as citizens of the United States and citizens of the State, by reason of their race and color; and because that they, the said persons of color, being then and there ·citizens of the State and of the United States, were then and there persons of African descent and race, and persons of color, and not white citizens thereof; the same being a right or privilege granted or secured to the said persons of color respectively, in common with all other good citizens of the United States, by the Federal Constitution and the laws of Congress.

Matters of law conceded, in the opinion of the court, may be assumed to be correct without argument; and, if so, then discussion is not necessary to show that every ingredient of which an offence is composed must be accurately and clearly alleged in the indictment, or the indictment will be bad, and may be quashed on motion, or the judgment may be arrested before sentence, or be reversed on a writ of error.    *United States* v. *Cook*, 17 Wall. 174.

Offences created by statute, as well as offences at common law, must be accurately and clearly described in an indictment; and, if the offence cannot be so described without expanding the allegations beyond the mere words of the statute, then it is clear that the allegations of the indictment must be expanded to that extent, as it is universally true that no indictment is sufficient which does not accurately and clearly allege all the ingredients of which the offence is composed, so as to bring the accused within the true intent and meaning of the statute defining the offence.    Authorities of great weight, besides those referred to by me, in the dissenting opinion just read,

may be found in support of that proposition. 2 East, P. C. 1124; *Dord* v. *People*, 9 Barb. 675; *Ike* v. *State*, 23 Miss. 525; *State* v. *Eldridge*, 7 Eng. 608.

Every offence consists of certain acts done or omitted under certain circumstances; and, in the indictment for the offence, it is not sufficient to charge the accused generally with having committed the offence, but all the circumstances constituting the offence must be specially set forth. Arch. Cr. Pl., 15th ed., 43.

Persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens thereof; and the fourteenth amendment also provides, that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States. Congress may, doubtless, prohibit any violation of that provision, and may provide that any person convicted of violating the same shall be guilty of an offence, and be subject to such reasonable punishment as Congress may prescribe.

Conspiracies of the kind described in the introductory clause of the sixth section of the Enforcement Act are explicitly forbidden by the subsequent clauses of the same section; and it may be that if the indictment was for a conspiracy at common law, and was pending in a tribunal having jurisdiction of common-law offences, the indictment in its present form might be sufficient, even though it contains no definite allegation whatever of any particular overt act committed by the defendants in pursuance of the alleged conspiracy.

Decided cases may doubtless be found in which it is held that an indictment for a conspiracy, at common law, may be sustained where there is an unlawful agreement between two or more persons to do an unlawful act, or to do a lawful act by unlawful means; and authorities may be referred to which support the proposition, that the indictment, if the conspiracy is well pleaded, is sufficient, even though it be not alleged that any overt act had been done in pursuance of the unlawful combination.

Suffice it to say, however, that the authorities to that effect are opposed by another class of authorities equally respectable, and even more numerous, which decide that the indictment is

bad unless it is alleged that some overt act was committed in pursuance of the intent and purpose of the alleged conspiracy; and in all the latter class of cases it is held, that the overt act, as well as the unlawful combination, must be clearly and accurately alleged.

Two reasons of a conclusive nature, however, may be assigned which show, beyond all doubt, that it is not necessary to enter into the inquiry which class of those decisions is correct.

1. Because the common law *is not a source of jurisdiction* in the circuit courts, nor in any other Federal court.

Circuit courts have no common-law jurisdiction of offences of any grade or description; and it is equally clear that the appellate jurisdiction of the Supreme Court does not extend to any case or any question, in a case not within the jurisdiction of the subordinate Federal courts. *State* v. *Wheeling Bridge Co.*, 13 How. 563; *United States* v. *Hudson et al.*, 7 Cranch, 32.

2. Because it is conceded that the offence described in the indictment is an offence created and defined by an act of Congress.

Indictments for offences created and defined by statute must in all cases follow the words of the statute: and, where there is no departure from that rule, the indictment is in general sufficient, except in cases where the statute is elliptical, or where, by necessary implication, other constituents are component parts of the offence; as where the words of the statute defining the offence have a compound signification, or are enlarged by what immediately precedes or follows the words describing the offence, and in the same connection. Cases of the kind do arise, as where, in the dissenting opinion in *United States* v. *Reese et al., supra*, p. 222, it was held, that the words *offer to pay a capitation tax* were so expanded by a succeeding clause of the same sentence that the word " offer " necessarily included readiness to perform what was offered, the provision being that the offer should be equivalent to actual performance if the offer failed to be carried into execution by the wrongful act or omission of the party to whom the offer was made.

Two offences are in fact created and defined by the sixth section of the Enforcement Act, both of which consist of a

conspiracy with an intent to perpetrate a forbidden act.  They are alike in respect to the conspiracy ; but differ very widely in respect to the act embraced in the prohibition.

1. Persons, two or more, are forbidden to band or conspire together, or go in disguise upon the public highway, or on the premises of another, *with intent to violate* any provision of the Enforcement Act, which is an act of twenty-three sections.

Much discussion of that clause is certainly unnecessary, as no one of the counts under consideration is founded on it, or contains any allegations describing such an offence.  Such a conspiracy with intent to injure, oppress, threaten, or intimidate any person, is also forbidden by the succeeding clause of that section, if it be done with intent to prevent or hinder his free exercise and enjoyment of *any right or privilege* granted or secured to him by the constitution or laws of the United States, or because of having exercised the same.  Sufficient appears in the thirteenth count to warrant the conclusion, that the grand jury intended to charge the defendants with the second offence created and defined in the sixth section of the Enforcement Act.

Indefinite and vague as the description of the offence there defined is, it is obvious that it is greatly more so as described in the allegations of the thirteenth count.  By the act of Congress, the prohibition is extended to any *right or privilege* granted or secured by the constitution or laws of Congress; leaving it to the pleader to specify the particular right or privilege which had been invaded, in order to give the accusation that certainty which the rules of criminal pleading everywhere require in an indictment ; but the pleader in this case, overlooking any necessity for any such specification, and making no attempt to comply with the rules of criminal pleading in that regard, describes the supposed offence in terms much more vague and indefinite than those employed in the act of Congress.

Instead of specifying the particular right or privilege which had been invaded, the pleader proceeds to allege that the defendants, with all the others named in the indictment, did combine, conspire, and confederate together, with the unlawful intent and purpose the said persons of African descent and

persons of color then and there to injure, oppress, threaten, and intimidate, and thereby then and there to hinder and prevent them in the free exercise and enjoyment of the *rights, privileges, and immunities and protection* granted and secured to them as citizens of the United States and citizens of the State, without any other specification of the rights, privileges, immunities, and protection which had been violated or invaded, or which were threatened, except what follows; to wit, the same being a right or privilege granted or secured in common with all other good citizens by the constitution and laws of the United States.

Vague and indefinite allegations of the kind are not sufficient to inform the accused in a criminal prosecution of the nature and cause of the accusation against him, within the meaning of the sixth amendment of the Constitution.

Valuable rights and privileges, almost without number, are granted and secured to citizens by the constitution and laws of Congress; none of which may be, with impunity, invaded in violation of the prohibition contained in that section. Congress intended by that provision to protect citizens in the enjoyment of all such rights and privileges; but in affording such protection in the mode there provided Congress never intended to open the door to the invasion of the rule requiring certainty in criminal pleading, which for ages has been regarded as one of the great safeguards of the citizen against oppressive and groundless prosecutions.

Judge Story says the indictment must charge the time and place and nature and circumstances of the offence with clearness and certainty, so that the party may have full notice of the charge, and be able to make his defence with all reasonable knowledge and ability. 2 Story, Const., sect. 1785.

Nothing need be added to show that the fourteenth count is founded upon the same clause in the sixth section of the Enforcement Act as the thirteenth count, which will supersede the necessity of any extended remarks to explain the nature and character of the offence there created and defined. Enough has already been remarked to show that that particular clause of the section was passed to protect citizens in the free exercise and enjoyment of every right or privilege granted

or secured to them by the constitution and laws of Congress, and to provide for the punishment of those who band or conspire together, in the manner described, to injure, oppress, or intimidate any citizen, to prevent or hinder him from the free exercise and enjoyment of all such rights or privileges, or because of his having exercised any such right or privilege so granted or secured.

What is charged in the fourteenth count is, that the defendants did combine, conspire, and confederate the said citizens of African descent and persons of color to injure, oppress, threaten, and intimidate, with intent the said citizens thereby to prevent and hinder in the free exercise and enjoyment of the right and privilege to vote *at any election to be thereafter had and held* according to law by the people of the State, or by the people of the parish; they, the defendants, well knowing that the said citizens were lawfully qualified to vote at any such election thereafter to be had and held.

Confessedly, some of the defects existing in the preceding count are avoided in the count in question; as, for example, the description of the particular right or privilege of the said citizens which it was the intent of the defendants to invade is clearly alleged: but the difficulty in the count is, that it does not allege for what purpose the election or elections were to be ordered, nor when or where the elections were to be had and held. All that is alleged upon the subject is, that it was the intent of the defendants to prevent and hinder the said citizens of African descent and persons of color in the free exercise and enjoyment of the right and privilege to vote *at any election thereafter to be had and held*, according to law, by the people of the State, or by the people of the parish, without any other allegation whatever as to the purpose of the election, or any allegation as to the time and place when and where the election was to be had and held.

Elections thereafter to be held must mean something different from pending elections; but whether the pleader means to charge that the intent and purpose of the alleged conspiracy extended *only* to the next succeeding elections to be held in the State or parish, or to all future elections to be held in the State or parish during the lifetime of the parties, may admit of

a serious question, which cannot be easily solved by any thing contained in the allegations of the count.

Reasonable certainty, all will agree, is required in criminal pleading; and if so it must be conceded, we think, that the allegation in question fails to comply with that requirement. Accused persons, as matter of common justice, ought to have the charge against them set forth in such terms that they may readily understand the nature and character of the accusation, in order that they, when arraigned, may know what answer to make to it, and that they may not be embarrassed in conducting their defence; and the charge ought also to be laid in such terms that, if the party accused is put to trial, the verdict and judgment may be pleaded in bar of a second accusation for the same offence.

Tested by these considerations, it is quite clear that the fourteenth count is not sufficient to warrant the conviction and sentence of the accused.

Defects and imperfections of the same kind as those pointed out in the thirteenth count also exist in the sixteenth count, and of a more decided character in the latter count than in the former; conclusive proof of which will appear by a brief examination of a few of the most material allegations of the charge against the defendants. Suffice it to say, without entering into details, that the introductory allegations of the count are in all respects the same as in the thirteenth and fourteenth counts. None of the introductory allegations allege that any overt act was perpetrated in pursuance of the alleged conspiracy; but the jurors proceed to present that the unlawful and felonious intent and purpose of the defendants were to prevent and hinder the said citizens of African descent and persons of color, by the means therein described, in the free exercise and enjoyment *of each, every, all, and singular the several rights and privileges* granted and secured to them by the constitution and laws of the United States in common with all other good citizens, without any attempt to describe or designate any particular right or privilege which it was the purpose and intent of the defendants to invade, abridge, or deny.

Descriptive allegations in criminal pleading are required to be reasonably definite and certain, as a necessary safeguard

to the accused against surprise, misconception, and error in conducting his defence, and in order that the judgment in the case may be a bar to a second accusation for the same charge. Considerations of the kind are entitled to respect; but it is obvious, that, if such a description of the ingredient of an offence created and defined by an act of Congress is held to be sufficient, the indictment must become a *snare* to the accused; as it is scarcely possible that an allegation can be framed which would be less certain, or more at variance with the universal rule that every ingredient of the offence must be clearly and accurately described so as to bring the defendant within the true intent and meaning of the provision defining the offence. Such a vague and indefinite description of a material ingredient of the offence is not a compliance with the rules of pleading in framing an indictment.   On the contrary, such an indictment is insufficient, and must be held bad on demurrer or in arrest of judgment.

Certain other causes for arresting the judgment are assigned in the record, which deny the constitutionality of the Enforcement Act; but, having come to the conclusion that the indictment is insufficient, it is not necessary to consider that question.