CULLERTON (UNITED STATES v.). See Case No. 14,899.

CULLEY (DONOHUE v.). See Case No. 3,-991.

## Case No. 3,466.
### CULLY v. BALTIMORE & O. R. CO.
[1 Hughes, 536.][2]

District Court, D. Maryland. Nov. Term, 1876.

CIVIL RIGHTS—PUBLIC CONVEYANCE—CITIZEN.

1. The act of congress of March 1, 1875 [18 Stat. 335], entitled "An act to protect all citizens

[1][Reported by Hon. William Cranch, Chief Judge.]
[2][Reported by Hon. Robert W. Hughes. District Judge, and here reprinted by permission.]

in their civil and legal rights," so far as it seeks to inflict penalties for the violation of rights which belong to citizens of a state, as distinguished from citizens of the United States, was the exercise of a power not authorized by the constitution of the United States.

2. The privilege of using for local travel any public conveyance, is in general a right which belongs to a person as a citizen of a state, and not as a citizen of the United States; and the denial of that privilege (except where it is charged in the pleadings, and proved in evidence to have been on account of race, color, etc.), does not subject to the penalties of the said act of congress.

This case [brought by Harriet E. Cully] was one of eighteen suits brought against the company in which each of the plaintiffs sought to recover the penalty of $500 imposed by the supplemental civil rights act of 1875, on the ground that the company had discriminated against them on account of their color by refusing them admission to a car with white passengers, but compelling them to occupy a separate and inferior car. On several prayers for instructions to the jury, submitted by counsel on either side, the judge gave the following opinion.

Archibald Stirling, Jr., U. S. Atty., and Henry C. Wysham, for plaintiff.
John H. Latrobe, J. K. Cowan, and Jas. A. Buchanan, for defendant.

GILES, District Judge. The case of Cully v. Baltimore & O. R. Co. is one of considerable importance, and the interest taken in it by a large class of our fellow-citizens induced me to do what I very seldom do—postpone the decision from yesterday until such time as I could carefully review the authorities bearing upon the subject. This I had an opportunity of doing last night, and I will now announce the conclusion at which I have arrived:

Allusion has been made by the learned district attorney to two previous decisions of this tribunal. I will remark that a case similar to the one now being tried was never at any previous time before this court. The cases to which the learned district attorney alluded, were those of Thompson v. Baltimore City Pass. R. Co. [Case No. 13,941], and Field v. Baltimore City Pass. R. Co. [Id. 4,763], in both of which cases recovery was had. In the Case of Thompson it was an action brought by a citizen of Virginia against the City Passenger Railroad Company for ejecting him from one of its street cars, upon the ground that he was a colored party, and had no right to ride inside of the car. I held in that case that since the colored race was made citizens of the United States by the first section of the fourteenth amendment, any discrimination of that kind made by any public conveyance against them, gave them a right of action for such damages as they may have suffered. That case was brought in this court, and its juris-

diction sustained, because while the plaintiff was a citizen of Virginia, the company was a company incorporated by the state of Maryland, and I should so hold again. The case of Field v. Baltimore City Pass. R. Co. was a similar case. It was the case of a colored person, a citizen of New Jersey, who had been denied the right to ride in the City Passenger Railway cars. He brought his action against the passenger railroad company and recovered. I held the jurisdiction to be perfectly clear, that no carrier of passengers, no public conveyance, after the colored people were made citizens of the United States, could deny them the privilege which other passengers received. Those are the only two cases of that character that have ever come before me.

There were two cases with regard to the fifteenth amendment, or right of suffrage. The case of U. S. v. Mason [Case No. 15,734], from Kent county, and U. S. v. Schumenant [Id. 16,236], in Anne Arundel county. I held in those cases that while the right of suffrage had not been granted by the fifteenth amendment, yet there had been granted a right not to be discriminated against, and the learned pleader of this court, with his usual caution, had embraced in these indictments the fact that they were rejected because they were colored people, and on account of their race, color, and previous condition of servitude, and I held, therefore, that while the congress could not give the right of suffrage they could protect it. I held, although the section looked to hostile legislation by the states, yet that under the last clause of the section, which gave them the right to enforce it by appropriate legislation, while they could not act criminally upon the state, they could punish those persons who denied to them the right to be protected against discrimination, the article in the constitution of the United States guaranteeing protection to the citizens in that regard. In that view I think I am sustained by the late decisions on that point. I merely allude to this, as my friend, the learned district attorney, alluded to the decisions of this tribunal in former cases. The question presented in the present case is a very different one. You will now observe the reason why I inquired of the district attorney, before the argument proceeded, upon what article of the constitution of the United States he founded the right to ride in cars engaged in the local travel of the state. You will observe the point of that question and its pertinency. Now what does it say? "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state where they reside." That makes them citizens. They are all citizens entitled to every right which a white citizen has in the states, and entitled to all rights which citizens of the United States possess in each. "No state shall make or enforce any law which shall abridge the privileges or immu-

nities of citizens of the United States." Now the supreme court has held—and these decisions have all been since I decided the cases to which I have referred—in the case of U. S. v. Reese [92 U. S. 214], and the Slaughterhouse Cases [16 Wall. (83 U. S.) 36; 10 Wall. (77 U. S.) 273; 111 U. S. 746, 4 Sup. Ct. 652], that this article of the constitution only protected such rights as belonged to a citizen of the United States. We all know the history of the Slaughterhouse Cases. There the legislature had undertaken to provide an abattoir, covering all the city, and saying no hogs, and no cattle, etc., should be slaughtered in any other place than within this inclosure, and that every butcher should carry his animals there to be slaughtered. The parties, who were butchers in New Orleans, thought this was an infringement, and that they were protected. They thought, as no doubt the pleader in this case thought, that all rights of a citizen were protected under this article of the constitution, and suits were brought to test the validity of this act.

The supreme court (and that was a case that came up under this very section) held there that the first clause of the fourteenth article was primarily intended to confer citizenship on all persons born or naturalized in the United States, and to declare them citizens of the United States, and citizens of the state wherein they resided, and it recognized the distinction between citizens of a state and citizens of the United States. The second clause, and the one we are dealing with here, protects from the hostile legislation of the states the privileges and immunities of citizens of the United States as distinguished from the privileges and immunities of citizens of the states, and they go on therefore to declare in that decision that the law of Louisiana in regard to the Slaughterhouse Case was no violation of the fourteenth amendment, and the party there had no protection under it; that for all privileges and immunities guaranteed to a citizen by the laws of his state, he must look to the state and her tribunals for protection and for redress, but for immunities and privileges which belong to him as a citizen of the United States, as such, this article protected him, and he could seek his recovery in the courts of the United States. And the court in its opinion (and it is a very able opinion) say, "It may be asked what, if any, are the rights of citizens of the United States as such?" The court enumerated a great many. The right to travel to the national capital on business of the government, the right to proceed to a port of the United States for foreign travel, and many others of a similar character, are rights which belonged to a citizen of the United States, from the organization of the government, and from its inception, independent of any special legislation, and it is only such rights that this article intended to protect. I need not go through with all the cases. It is carried out

in the cases of U. S. v. Reese [supra], and U. S. v. Cruikshank [92 U. S. 542]. But the Saughterhouse Case was the first one that announced this doctrine, and it was the first one that called the attention of the people of this country to the distinction between rights that belonged to citizens of the states, and the rights which belonged to the citizens of the United States as such.

Now, gentlemen, if that is the law, and certainly no one can read those authorities without being convinced, for the supreme court have never been clearer than they have been on this subject; whatever might have been my views before, it has always been my privilege and my pleasure, as it is my duty to carry out the decisions of that high tribunal. Taking, therefore, this view of the case, gentlemen, I shall give one instruction which ends the case, and the jury will render the verdict for the defendant. Here is my instruction: I reject all the other prayers. I would remark that I have not considered one proposition argued by the learned counsel for the defendant here, and argued by the learned district attorney with regard to the character of this action. I should rather be inclined to think that the district attorney, in his argument, was right; that while it is an action for a penalty, it is an action at law, and the parties, therefore, would have the same rules applied to them as they would in any other action at law. But I have not looked at the authorities on that point. The act of congress of March 1, 1875, under which this action is brought, so far as it seeks to inflict penalties for the violation of any or all rights which belong to citizens of a state, and not to citizens of the United States as such, was the exercise of a power not authorized by any provision of the constitution of the United States, and as the privilege to use for local travel any public conveyance is not a right arising under the constitution of the United States, there can be no recovery of the penalty sued for in this case, and the jury will render their verdict for the defendant.

Exceptions to the ruling of the court were reserved by the United States attorney, and the case went to the supreme court of the Unied States.

The jury were then polled, and in accordance with the instructions of the court rendered their verdict for the defendant. The cases of the seventeen other plaintiffs were disposed of by this result.