UNITED STATES v. EBERHART et al.

(Circuit Court, N. D. Georgia. January 25, 1899.)

1. CONSPIRACY—PERSONAL LIBERTY—DEPRIVATION—FEDERAL JURISDICTION.

Where an indictment charged that defendants conspired to injure, oppress, threaten, and intimidate B., a citizen of the United States, in the free exercise of his privilege of contracting and being contracted with, his right of personal security and personal liberty, and the overt act charged was the seizing of B., the placing of handcuffs on him, and compelling him, by force and against his will, to enter into a pretended contract to work for a long period of time for the defendant, the indictment did not state an offense within the jurisdiction of the federal courts, under Rev. St. § 5508 [U. S. Comp. St. 1901, p. 3712], prohibiting conspiracy to injure or intimidate citizens in the exercise of civil rights, the citizen's right to personal liberty and security being within the primary jurisdiction of the state.

E. A. Angier, U. S. Atty., and Geo. L. Bell, Asst. U. S. Atty.

Alex. S. Erwin, T. W. Rucker, Hamilton McWhorter, and E. T. Brown, for defendants.

NEWMAN, District Judge. This is an indictment against William Eberhart and Albert Boykin for conspiracy under section 5508, Rev. St. [U. S. Comp. St. 1901, p. 3712], to which a general demurrer is filed on the ground that it fails to state any offense under the section named. The indictment contains three counts, charging the same offense in respect to three different individuals. The charge is that the defendants conspired "to injure, oppress, threaten, and intimidate one Thomas Bush, a citizen of the United States, in the free exercise and enjoyment of a right and privilege secured to him by the Constitution and laws of the United States, to wit, the right and privilege of contracting and being contracted with, and the right and privilege of personal security, that is, the free and uninterrupted enjoyment of life, limb, body, health, and reputation, and the right and privilege of personal liberty, that is, moving and going wherever he, the said Thomas Bush, desired without restraint or control save by due process of law, and the right and privilege of private property, or the free use, enjoyment, and disposal of his own acquisitions, without any restraint, control, or diminution save by the process of law; each and all of said rights and privileges being secured to him by the Constitution and laws of the United States." And the further charge is that these defendants and others did conspire "to deprive the said Thomas Bush of the rights, privileges, and immunities aforesaid, and to establish slavery and involuntary servitude, not as a punishment for crime whereof the party shall have been duly convicted, but to obtain cheap, servile labor to conduct the farming. operations of the said William Eberhart and Albert Boykin and others to the grand jurors unknown, at a cost below that which said farm laborers were entitled to." It is further charged that "in furtherance of said conspiracy, so formed as aforesaid, for the purpose aforesaid, and to effect the object thereof, the said William Eberhart and Albert Boykin, with other evil-disposed persons to the grand jurors unknown, did on the day and date aforesaid deprive the said

Thomas Bush of his rights and privileges aforesaid, and did then and there make an unreasonable seizure of the person of the said Thomas Bush, and did then and there reduce him, the said Thomas Bush, to a condition of vassalage and serfdom, and the said William Eberhart and Albert Boykin, with divers other evil-disposed persons to the grand jurors unknown, conspiring together as aforesaid, for the purpose aforesaid, did with force and arms, and without any authority of law, seize and arrest the said Thomas Bush, and did place handcuffs upon him, said Thomas Bush, and did compel him, by force and against his will, to enter into a pretended contract with' the said William Eberhart to work for and serve him for a long period of time, and did subject him to said involuntary servitude by force, intimidation, and threats."

It will be perceived that the object of conspiracy is charged to be to deprive Bush first of the "right and privilege of contracting and being contracted with"; and, secondly, the "right and privilege of personal security, that is, the free and uninterrupted enjoyment of life, limb, body, health, and reputation, and the right and privilege of personal liberty, that is, moving and going wherever he, the said Thomas Bush, desired without restraint or control"; the overt act charged being that Bush was seized, handcuffs placed upon him, and he compelled by force and against his will to enter into a pretended contract to work for a long period of time for the said William Eberhart.

Of course, the real question in this case is as to whether the rights infringed, as gathered from the indictment, are rights pertaining to the individuals against whom the conspiracy was formed as citizens of the United States, as distinguished from their rights as citizens of the state. There has been much discussion of this question, and there are numerous decisions of the Supreme Court thereon. It is clearly laid down in all the cases, commencing with the Slaughter House Cases, 16 Wall. 36, 21 L. Ed. 394, that the rights of citizens of a state are those which are fundamental, and among these fundamental rights that of personal liberty. Unless in some way the right to prevent the exercise of which, or on account of the exercise of which, the wrong is done, is a right exercised by the citizen under and by virtue of the Constitution or laws of the United States, as distinguished from his fundamental and primary rights as a citizen of a state, no case is made for the federal courts under the section named. Many of the rights which come within this classification rights of citizens of the United States have already been passed upon by the Supreme Court. As to the rights and privileges which are protected, and the character of the same, reference may be made to a recent opinion of the Supreme Court in a case that went up from this district on application for a writ of habeas corpus (In re Quarles and Butler, Petitioners, 158 U. S. 532, 15 Sup. Ct. 959, 39 L. Ed. 1080). Referring to section 5508, in the opinion by Mr. Justice Gray it is said:

"Among the rights and privileges which have been recognized by this court to be secured to citizens of the United States by the Constitution are the right to petition Congress for a redress of grievances (U. S. v. Cruikshank, 92

.U. S. 542, 553 [23 L. Ed. 588]); and the right to vote for presidential electors or members of Congress (Ex parte Yarbrough, 110 U. S. 651 [4 Sup. Ct. 152, 28 L. Ed. 274]); and the right of every judicial and executive officer, or other person engaged in the service or kept in the custody of the United States, in the course of the administration of justice, to be protected from lawless violence. There is a peace of the United States. In re Neagle, 135 U. S. 1, 69 [10 Sup. Ct. 658, 34 L. Ed. 55]; U. S. v. Logan [12 Sup. Ct. 617, 36 L. Ed. 429], above cited."

In the case from which this extract is given the right held to be protected was that of a private citizen to report to a deputy marshal violations of internal revenue laws of the United States.

The foregoing instances are sufficient to distinguish the character of right which an individual has as a citizen of the United States from those original rights which he has as a citizen of the state in which he resides. So full and ample are the decisions of the Supreme Court on the question raised here, and as to the character and scope of these constitutional amendments, and especially as to the rights, certainly as to the character and nature of rights, pertaining to citizens as citizens of the United States, that a discussion of them here would be superfluous.

It may be proper to quote briefly from the case of Cruikshank v. United States, 92 U. S. 542, 23 L. Ed. 588, as bearing directly upon the question presented here, namely, how the fundamental right of a citizen to personal liberty is protected. In discussing the third and eleventh counts, after stating that they are even more objectionable than other counts before discussed, the opinion proceeds:

"They charge the intent to have been to deprive the citizens named, they being in Louisiana, of their respective several lives and liberty of person without due process of law. This is nothing else than alleging a conspiracy to falsely imprison or murder citizens of the United States, being within the territorial jurisdiction of the state of Louisiana. The rights of life and personal liberty are natural rights of man. 'To secure these rights,' says the Declaration of Independence, 'governments are instituted among men, deriving their just powers from the consent of the governed.' The very highest duty of the states, when they entered into the Union under the Constitution, was to protect all persons within the boundaries in the enjoyment of those 'inalienable rights with which they were endowed by the Creator.' Sovereignty for this purpose rests alone with the states. It is no more the duty or within the power of the United States to punish for a conspiracy to falsely imprison or murder within a state than it would be to punish for false imprisonment."

Nothing could be added to this language of the Supreme Court. Quotations of the same purport might be made from other cases, but it is unnecessary, so clear and so pertinent is the extract given from the Cruikshank Case. As the matters charged in the indictment make no case under section 5508, Rev. St. [U. S. Comp. St. 1901, p. 3712], or under any other law of the United States, the demurrers must be sustained.