## JOSEPH MOORE *vs.* JOEL FLETCHER.

If the proprietor of land on which are a mill and mill privilege grant to one son "the use, privilege and benefit of one half of a saw-mill," and on the same day grant to another son a tract of land, including that whereon the mill stood, " excepting the privilege of one half of a saw-mill conveyed to " the other son, " and his heirs;" the grant and the reservation are to be construed together to ascertain the intention of the parties; and one half of the mill and mill privilege pass by the grant.

The words, *mill privilege*, or *the privilege of a mill*, in a grant are to be understood as meaning the land on which the mill and its appendages stand and the land and water then actually and commonly used with the mill and necessary to the enjoyment thereof.

The omission to use a portion of the mill-yard for a single year will not prevent its becoming a part of it by appropriation and long use.

Nor can the quantity of land be lessened by proof, that the mill might have been well used by the occupation of less land, than was in fact used.

In a writ of entry the demandant claimed an undivided half of a small tract of land in *Anson*, on which stood a brick blacksmith's shop. The testimony on the trial, before EMERY J., is given at length in the report, but the questions of law arising thereon will be understood from the facts stated in the opinion of the Court. The counsel for the tenant requested the Judge to instruct the jury that by the deed of *John Moore, Sen.*, to the demandant, the soil of the premises did not pass; that if the soil might have passed by the deed as being necessary to the use of the saw-mill, the same did not pass inasmuch as there are no bounds mentioned in the deed, or that it is void for uncertainty; that the deed gave to the demandant nothing but the saw-mill and right of using water sufficient for the same, and land enough adjoining it for a mill brow, or land which was absolutely necessary to the using of the mill. The Judge declined to give these instructions, and did instruct the jury, that if from the evidence they did not find, that previous to the execution of the deed from *Moore, Sen.* to the demandant, the demanded premises had been used as a mill-yard appurtenant to the mill for depositing logs and boards, and was necessary as a privilege for the enjoyment and use of the saw-mill, they would find a verdict for the defendant. They also requested, that the jury should be instructed, that if they did not find, that the demanded

premises were uniformly used as a place for laying logs and boards every year after the mill was built until the deed was given, they ought to find for the defendant. The Judge declined to give this instruction. The defendant offered evidence to show, " that the saw-mill might be well used with the use of land enough for a mill brow and without the use of almost one half an acre of ground for a mill-yard," which evidence the Judge refused to receive. The verdict was for the demandant.

*Boutelle,* for the tenant, argued in support of the positions taken at the trial, and cited *Howard* v. *Wadsworth,* 3 *Greenl.* 471; *Leonard* v. *White,* 7 *Mass. R.* 6 ; *Blake* v. *Clark,* 6 *Greenl.* 436 ; *Worcester* v. *Greene,* 2 *Pick.* 425 ; *Tyler* v. *Hammond,* 11 *Pick.* 193 ; *Hasty* v. *Johnson,* 3 *Greenl.* 282 ; *Thompson* v. *Androscoggin Bridge,* 5 *Greenl.* 62 ; *Gayetty* v. *Bethune,* 14 *Mass. R.* 49 ; 1. *B. & P.* 370 ; *Grant* v. *Chase,* 17 *Mass. R.* 443.

*Tenney,* for the demandant, contended, that the grant and the reservation should be construed together, and had the same meaning, which manifestly was, that not only the use of the mill then standing, but the land and mill privilege also should pass to the demandant. And the extent of the mill privilege is determined by the quantity of land then used for that purpose with the mill. He argued, that the denial of the Judge to give the instructions requested was proper, and that the instructions given were correct. *Hathorn* v. *Stinson,* 1 *Fairf.* 233 ; *Vickerie* v. *Buswell,* 13 *Maine R.* 289 ; 2 *Black. Com.* 105; *Worthington* v. *Hylyer,* 4 *Mass. R.* 205; 5 *Serg. & R.* 107 ; *Farrar* v. *Stackpole,* 6 *Greenl.* 154; *Story* v. *Odin,* 12 *Mass. R.* 157 ; 4 *Kent,* 456 ; *Barney* v. *Norton,* 2 *Fairf.* 350.

The opinion of the Court was subsequently prepared by

SHEPLEY J. — On the 12th of April, 1808, *John Moore, Senior,* being the owner of the tract of land including the premises, with a saw mill standing thereon, conveyed a part of that tract, not including the premises, to his son the demandant, and " also the use, privilege, and benefit of one half of a saw mill." And on the same day by another deed conveyed to his son *John Moore, Jr.,* under whom the defendant claims, a part of the estate, includ-

ing within the bounds the premises, " excepting the privilege of one half of a saw mill conveyed to *Joseph Moore* and his heirs." The rights of the parties depend upon the true construction of these clauses in the deeds.

The application of the rule of law, that ambiguous language is to be construed strictly, as in the case of *Howard* v. *Wadsworth,* 3 *Greenl.* 471, is claimed for the tenant. The rule is not properly applicable to this case, because the grantor at the time he created the exception, conveyed to the demandant what was excepted, making reference in that deed to the exception. Both deeds being of the same date, and thus connected by reference are to be examined together to ascertain the true intention of the parties. Was it the design to convey to the demandant only the right of use of one half of the saw mill then standing, or was it to convey an estate in the mill and privilege, as it had been before used ?

The use, the benefit, and the privilege of a saw mill may refer only to the right of occupation. The words use, and benefit, have that appropriate signification. And the word privilege in common acceptation, means some immunity, or advantage. When used in connexion with a mill it has in this part of the country acquired a peculiar meaning well understood. By the privilege of a mill, or its equivalent, mill privilege, is understood the land and water used with the mill, and on which it and its appendages stand. There might be some doubt in what sense the word was used in the deed to the demandant on account of its connexion with the words, use and benefit. If those words had been omitted, the deed would have read, also the privilege of one half of a saw mill; and there could then have been but little doubt, that the design was to convey under that phraseology, a title to the land and water power. Whatever of doubt might arise from such connexion is removed by the language of the exception in the other deed. The exception is of the " privilege of one half of a saw mill conveyed to *Joseph Moore* and his heirs." This language has acquired such a meaning, that it would be a forced construction, that should hold, that it meant no more, than the privilege of using a saw mill while it might remain standing.

The decisions respecting mills, and privileges have necessarily been made with reference to the peculiar phraseology in each deed

or devise. In the case of *Howard* v. *Wadsworth, 3 Greenl.* 471, the exception was, " exclusive of the grist mill now on said falls, with the right of maintaining the same."

From the use of different language in the grant and in the exception, the words, mill privilege, being used in one, and the word, privilege, being omitted in the other, from the use the word now and from the right being given to maintain it, which would not be appropriate when a fee was granted, the Court concluded, that the intention was to except only the mill then standing, and not any part of the privilege, after it ceased to exist.

In the case of *Blake* v. *Clark*, 6 *Greenl.* 436, " the saw mill," without other description, was assigned to one of the heirs of the estate. And it was decided, that the fee of the land on which it and its appendages stood, and the use of the water, and any easement used with, or necessary to its enjoyment, would pass, but not the fee of the mill yard formerly used with the mill. The intention to convey no greater estate than an easement in the mill yard was inferred from the language used in assigning the widow's dower, and in the division of the other portions of the estate.

In the case of *Whitney* v. *Olney*, 3 *Mason*, 280, the devise was of a moiety of " two paper mills," and " appurtenances."

Mr. Justice *Story* was of opinion, that " all the land under the mill, and necessary for the use of it, and commonly used with it, passed to the devisees."

In this case, the terms, privilege, and mill, are both used, which ordinarily would pass both the mill and privilege, and the doubt has arisen from their arrangement and connexion with other words, which may be accounted for by the want of skill and knowledge in the scrivener.

The exception and grant cannot be considered void for uncertainty, as they must refer to the saw mill, upon the premises conveyed to *John Moore, Jr.*

The extent of the privilege or mill yard was properly left to the jury under the instructions. The rights of the oil mill, nail mill, and potash appear to have been defined by deed, and could no otherwise affect the rights of these parties than as evidence of the use made of the *locus* demanded. The omission to use any portion of the mill yard for a single year could not prevent its becom-

ing a part of it by appropriation and long use. Nor could it be curtailed by proof, that the mill might be well used by the occupation of less land than was in fact used.

The jury have found, that the demanded premises have been used as a mill yard for depositing logs and boards and were necessary as a privilege for the enjoyment and use of the mill.

*Judgment on the verdict.*