NEHEMIAH RIPLEY *vs.* EDWARD G. KNIGHT.

Plymouth. Oct. 16, 1877. — Jan. 14, 1878. MORTON, LORD & SOULE, JJ., absent.

After a dispute of some years' duration between a town and the proprietors of common lands therein, about the rights of taking seaweed from the shores, the Legislature, upon the petition of the proprietors and with the consent of the town, incorporated the proprietors by an act which defined the bounds of their lands and reserved to the town " the privilege of the shores." For several years before and for twenty-six years after the passage of this act, the town let to various persons the right to take seaweed, sand, gravel and stones from the shores or beaches, and used such sand and gravel to repair its highways, and during that period it was not interfered with by the proprietors. *Held*, that the town's "privilege of the shores" included the right to take sand and gravel to repair its highways, if the beach would not be materially affected thereby.

TORT for taking sand and gravel from the southerly portion of Nantasket or Long Beach in Hull. The case was submitted

to the Superior Court, and, after judgment for the defendant, to this court, on appeal, on an agreed statement of facts, so much of which as is necessary to the understanding of the point decided was as follows :

The defendant, acting under the authority of the town of Hull, dug up and carried away the sand and gravel for the purpose of repairing its highways ; and, if the town had the right to take sand and gravel from the beach, the defendant was justified in so doing ; all such sand and gravel was taken from between mean high-water mark and mean low-water mark. The beach in question was within the bounds of the common and undivided lands in Hull, recited in the St. of 1811, c. 56, §§ 1, 3, and was conveyed to the plaintiff by the county commissioners of the county of Plymouth on November 14, 1866. For some years before 1810 the rights of taking seaweed from the beaches, and of feeding cattle on the common and undivided lands in Hull, had been in dispute between the proprietors and the town. In May, 1810, the proprietors presented a petition to the Legislature, representing that, in consequence of the town's never having particularly located a highway across these commons, the inhabitants had claimed and exercised a right of turning their cattle and sheep into the streets, whereby they had free communications with the commons ; and praying for an act of incorporation " to enable the proprietors of these common rights to secure, manage and dispose of the same, so as to secure their rights and best promote their interests."

On November 17, 1810, the town passed this vote : " Voted, not to oppose the petition of said proprietors, if the proprietors agree to let the town have the beaches ; also all the feeding lands in the township from Stony Beach to the point that is enclosed by gates and water-fences ; also said town doth agree to give up to said proprietors all the feed that grows on the road leading through said commons. In consequence, said proprietors are to give up said beaches to the town, that is to say, said proprietors do give up to the town all said beaches rent for, be it more or less ; then voted and agreed that the town pay for all the gates and water-fences."

On June 22, 1811, the Legislature passed an act incorporating the proprietors, (St. 1811, c. 56,) the first section of which defined

the boundaries of their lands, including the whole of Nantasket or Long Beach, and the third section contained this clause, "also reserving to the town of Hull the privilege of the shores, and of feeding all lands, not comprehended within the aforementioned bounds."

The records of the town from 1780 to 1808 are lost, and no proprietors' records between those dates are in existence, so that no means exist of ascertaining who had control of and took the seaweed, sand and gravel from the beaches during that time. In 1808, 1809 and 1810, the town voted to let to various persons the right to take from the beaches seaweed, stones, sand and gravel. From 1810 to 1837, the town, by various votes, sold stones, sand, gravel, seaweed and driftwood from the beaches, claimed the beaches as belonging to the town, and that they were to be defended as such by law, and used sand and gravel from the beaches to repair its highways; and during that period the town was not interfered with in its dealing with the beaches, its doings being known to the proprietors. The proprietors organized under the St. of 1811, on March 5, 1812, and have since had exclusive possession of the land described in the first section, except in so far as their possession of Nantasket or Long Beach is deemed to be controlled by the facts herein stated. For a long series of years, beginning as early as 1837, until 1864, as shown by the votes of the town and of the proprietors, the right to manage the beaches was in controversy between them. On May 29, 1865, the county commissioners of the county of Plymouth purchased, under the authority of the St. of 1864, *c.* 45. the common and undivided lands of the proprietors.

*H. D. Hyde & J. O. Burdett*, for the plaintiff.

*P. E. Tucker*, for the defendant.

ENDICOTT, J. This record presents the question whether the town of Hull has the right to take sand and gravel from the beach of the plaintiff to repair its highways. In deciding this, it is unnecessary to consider whether the ancient title to this beach and the other beaches in Hull was in the proprietors of the common and undivided lands in Hull, from whom the plaintiff has derived his title. There was a controversy between the proprietors and the town in regard to the right to take seaweed, sand, gravel and stone from the beaches and shores, and in 1810

the proprietors applied to the Legislature for an act of incorporation. Of this the town had notice, and in town meeting it was voted, among other things, not to oppose the petition, "if the proprietors agree to let the town have the beaches." By consent of both parties, the St. of 1811, c. 56, incorporating the proprietors, was passed; and § 3 contains the clause, "also reserving to the town of Hull the privilege of the shores, and of feeding all lands, not comprehended within the aforementioned bounds;" the bounds are described in §°1. It is obvious that it was not the intention by these words to confer any new privilege or rights upon the town, but that the town should retain such privilege or right as it then possessed and had previously exercised.

In *Cushing* v. *Worrick*, 9 Gray, 382, it was held that this clause confirmed the privilege of the town to all the beaches, and not merely to those "not comprehended within the aforementioned bounds," and that the act, having been passed by consent of all the parties in interest, was binding. The court say: "The construction which we adopt is the same which was acquiesced in by the parties for twenty-six years succeeding the passage of the statute." It was accordingly decided that a lessee of the proprietors could not maintain an action against a person who, acting under a license from the town, had taken seaweed from Nantasket Beach.

The only question in this case is whether the "privilege of the shores" includes the right to take sand and gravel, as well as seaweed. The extent of the "privilege of the shores," reserved to the town, is not defined or limited by the statute. If we were to construe these words by themselves, as creating a new right in the town, and without regard to the peculiar circumstances under which the act was passed, the question would be presented for decision whether they would authorize the town to remove sand, earth or gravel, cast upon the shore by the sea and becoming part thereof, although capable of being removed without damage to the shore itself. But construing the words "reserving to the town the privilege of the shores," in view of the actual condition of things at the time, and of the subject matter to which they apply, as a simple confirmation of the privilege then existing and enjoyed by the town in the shores, we may properly look to the acts and the conduct of the parties to ascertain the

extent of the privilege thus intended to be reserved and confirmed to the town. On this point, the record affords abundant evidence.

The records of the town and of the proprietors from 1780 to 1808 are lost. But it appears by the town records that in 1808 the town voted to let to various persons the right to take from the shores and beaches seaweed, sand, gravel and stone. Similar votes were passed in 1809 and in 1810. During that time, it does not appear that the proprietors exercised any authority over the beaches. And it is agreed that the town dealt with the beaches, each year from 1808 to 1837, in the manner indicated by their votes, and during that period it was not interfered with by the proprietors. We find therefore disclosed by these records and agreements the character and extent of the use or privilege in the shores, exercised by the town at the time the act was passed, and the acquiescence of the proprietors in such use for twenty-six years afterwards. And we are of opinion that this use was intended to be reserved to the town as " the privilege of the shores."

Nor is the natural meaning of the word "privilege," which may be defined as a right peculiar to an individual or body, inconsistent with this construction. As applied to the shores of the sea, its obvious meaning is the right to take those things cast upon the shore by the sea. They are alluded to in *Cushing* v. *Worrick*, as seaweed, shells, and other profits of the beach or shore between high and low-water mark. But what these profits are must depend upon the circumstances of each case. Sand, gravel and stones are often washed by storms upon a sea beach, the removal of which would not materially affect the beach itself. In some localities, great quantities of such material are thrown up. We cannot say that this is not the case upon the beaches and shores of Hull, and, from the record, such appears to be the fact. The right to remove them might, under such circumstances, be properly described as a privilege, if it appears that such was the right intended to be given or secured. There is nothing in this case which shows that the defendant, acting for the town of Hull, exceeded this privilege when he took sand, earth and gravel, for the repair of the highways, from the plaintiff's beach. And it is unnecessary to determine whether the

privilege named in the statute gives any more extensive right to the town than this.

After 1837, and until 1864, when, by the St. of 1864, c. 45, the county commissioners were authorized to purchase of the proprietors their lands, the right to manage the beaches was in controversy between the town and the proprietors. But that fact is immaterial, as the rights of the town, to the extent we have indicated, were determined by the St. of 1811. The plaintiff, who purchased of the county commissioners, can have no greater rights than the proprietors, and takes his land subject to such privileges as the town may have therein.

No argument was addressed to us by either side in regard to the St. of 1864, c. 45, § 3, and we have not considered the bearing of that section on the matter in controversy.

*Judgment for the defendant.**

---

* The St. of 1878, c. 163, makes it an offence, punishable by fine or imprisonment, for any person or corporation to take or remove, without the consent in writing of the board of harbor commissioners, from any of the shores or beaches in the town of Hull, " any earth, sand, gravel, stones or other material of like nature, now or hereafter composing such shores or beaches."