UNITED STATES v. MOORE et al.

(Circuit Court, N. D. Alabama, S. D.   May 8, 1904.)

**1. CONSTITUTIONAL LAW—RIGHTS OF CITIZENS—ORGANIZATION.**

The right of a citizen to organize miners, artisans, laborers, or persons in any pursuit, as well as the right of individuals in such callings to unite for their own improvement or advancement, or for any other lawful purpose, is a fundamental right of a citizen in all free governments; but it is not a right, privilege, or immunity granted or secured to citizens of the United States, by its Constitution or laws, and is left solely to the protection of the states.

**2. SAME—LIFE AND LIBERTY.**

The fourteenth amendment of the federal Constitution, which prohibits a state from depriving any person of his life, liberty, or property without due process of law, adds nothing to the rights of any citizen against another, but merely furnishes additional guaranties against any encroachment by the states upon the fundamental rights which belong to every citizen as a member of society.

**3. SAME—FEDERAL COURTS—JURISDICTION.**

Federal courts have no jurisdiction to punish a conspiracy to oppress and intimidate a citizen of the United States to prevent him from exercising the right to establish a miners' union in a state, in the furtherance of which defendants were alleged to have assaulted such citizen, with intent to murder him by shooting at him with a pistol; such offense being entirely within the jurisdiction of the state courts.

On Demurrer to Indictment.

The indictment, found under section 5508 of the Revised Statutes [U. S. Comp. St. 1901, p. 3712], contained two counts. The first charged that the defendants, Charles Moore, William Ballinger, John Chance, George De Loach, Luther Rayburn, and Sterling Shores, conspired to injure, oppress, and intimidate one B. L. Greer, a citizen of the United States, to prevent the free exercise and enjoyment by him of a right or privilege secured to him by the Constitution and laws of the United States, to wit, "the right and privilege of establishing, organizing, and perfecting a local union of the United Mine Workers of America at Empire, in the county of Walker and state of Alabama," and that, in pursuance of the conspiracy, and to effect its object, the defendants unlawfully assaulted and beat said Greer, etc. The second count charges a conspiracy among defendants to injure, oppress, and threaten said

Greer "for having, and because of his having exercised the right and privilege," named, setting it forth as described in the first count, and that, in the execution of the conspiracy, and to effect its object, the defendants unlawfully, and with malice aforethought, assaulted said Greer with intent to murder him by shooting at him with a pistol, etc.

The defendants demurred substantially on the following grounds: (1) Because it appears from the indictment that the right or privilege claimed is not secured to said Greer as a citizen of the United States by the Constitution and laws thereof, and that said conspiracy and assault did not violate any privilege or immunity of a citizen of the United States. (2) The indictment shows that no offense was committed against the criminal laws of the United States, but only an offense against the laws of the state of Alabama. (3) The indictment shows that this court has no jurisdiction to try and punish the offense set forth.

Thos. R. Roulhac, Dist. Atty., and N. L. Steele, Asst. Dist. Atty., for the United States.

Walker Percy and W. I. Grubb, for defendants.

JONES, District Judge (after stating the facts as above). Unquestionably the right of a citizen to organize miners, artisans, laborers, or persons in any pursuit, as well as the right of individuals in such callings to unite for their own improvement and advancement, or for any other lawful purpose, is a fundamental right of a citizen, protected in every free government worthy of the name. The only issue this case presents is, to what government, under our complex institutions, is committed the duty to protect that right?

In ascertaining the privileges or immunities of citizens of the United States, as distinguished from the rights which pertain to the citizen of the state as such, and to what governments, respectively, their protection is committed, we must consult the history of our institutions, as well as the language of the Constitution. All well-informed persons know that our ancestors brought with them from England traditionary privileges, personal and political rights, which had been gained in struggles between Commons and King, confirmed by repeated acts of Parliament and judicial decisions, and so long acquiesced in that in time they finally became the accepted maxims of government which constitute the British Constitution. The Revolution deprived the people of the Colonies of none of these rights, but put them more directly in their own keeping. Their painful experience with the helplessness and inefficiency of the government under the Articles of Confederation convinced the people that their welfare and happiness would be best subserved by committing some of their powers, rights, and liberties to a new government, which, as to such matters, should be supreme and independent of the states. Accordingly the people of the United States, acting through their several state conventions, created the government of the United States, with all needful power to conduct their affairs with other nations, to regulate the rights of the states, and the rights of citizens of different states as among themselves and with the general government, and some other matters of common concern to the people, and committed to the new government all their powers, rights, and liberties as to those carefully enumerated matters, specified in the Constitution of the United States, and reserved all the other rights, powers, and liberties theretofore enjoyed by the people of the states to

the keeping and protection of the state governments, which remained after the adoption of the Constitution, as they were before, sovereign as to them. As there was much apprehension in the conventions which ratified the Constitution, which contained no bill of rights, that the rights of the states and of the people would be unduly trenched upon by the general government, the first Congress proposed ten amendments; the resolutions submitting them, reciting that:

"The conventions of a number of states having, at the time of their adopting the Constitution, expressed a desire, in order to prevent misconstruction or abuse of its powers, that proper declaratory and restrictive clauses should be added; and as extending the ground of public confidence in the government will best insure the beneficent ends of its creation," etc.

These amendments denied power to Congress to interfere with certain enumerated rights of the citizen, and gave certain constitutional guaranties, as to the right of trial by jury, etc. The last two of the ten amendments thus proposed provided that "the enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people," and that "the powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states, respectively, or to the people." It is quite apparent, therefore, that the protection of certain rights of the citizen of a state, although he is by recent amendments made a citizen of the United States and of the state in which he resides, depends wholly upon laws of the state, and that as to a great number of matters he must still look to the states to protect him in the enjoyment of life, liberty, property, and the pursuit of happiness.

Inevitably, then, when a citizen claims protection of a right or privilege, as one secured to citizens of the United States by its Constitution or laws, these inquiries arise: Is the right or privilege claimed granted in terms by any provision of the Constitution, or so appropriate and necessary to the enjoyment of any right or privilege which the Constitution does specify and confer upon citizens of the United States as to arise by necessary implication? Is its exercise necessary or appropriate in the performance of any of the duties which the Constitution and laws of the United States exact from its citizens? Is its protection by federal authority needful to the just supremacy of the general government over any matter committed to it, or directly conservative or promotive of any of the ends for which the Constitution ordained the government of the United States? If the character of the right or privilege claimed does not permit affirmative answer to any of these inquiries, it is clear the right is not derived from or dependent on the Constitution, and its protection is not committed to the general government.

It is no longer open to discussion or doubt that "the United States are a nation whose powers of government, legislative, executive, and judicial, within the sphere of action confided to it by the Constitution, are supreme and paramount. Every right created by or arising under or dependent upon the Constitution may be protected and enforced by such means and in such manner as Congress, in the exercise of the correlative duty of protection and of the legislative powers conferred upon it by the Constitution, may, in its discretion, deem most eligible

and best adapted to attain the object." In re Quarles and Butler, 158 U. S. 535, 15 Sup. Ct. 960, 39 L. Ed. 1080; Logan v. United States, 144 U. S. 293, 12 Sup. Ct. 617, 36 L. Ed. 429. Among the rights and privileges secured to citizens of the United States, expressly or impliedly, which are grouped here to show how entirely different they are in origin and nature from the right involved in this case, are the right to vote for presidential electors and members of Congress; the right to hold and seek office under the federal government; the right to petition Congress for redress of grievances, and to freely print, speak, or write one's sentiments, being responsible for the abuse thereof, concerning any right or matter committed to the federal government; the right, of his own volition, to become a citizen of any state of the Union by bona fide residence therein, with the same rights as other citizens of that state; the right of every judicial or executive officer or other person engaged in the service, or kept in the custody of the United States, in the course of the administration of justice, to be protected from lawless violence; the right to the privileges of the writ of habeas corpus; the right to go to and return from the seat of government; the right to resort to the courts of the United States; the right to communicate to any executive officer any information which the citizen has of the commission of an offense against the laws; the right to engage in interstate commerce; the right to enter a homestead upon the public domain, and live on it for the purpose of perfecting the entry; the right to claim the protection of the government when on the high seas or in foreign lands, or in any place committed exclusively to federal jurisdiction; the right to be exempt from discrimination on account of race, as to equality before the law, suffrage, or service on juries; the right to pass from one state to any other for any lawful purpose; the right to be free from taxes and excises not imposed by the state on its own citizens; and the right to be free from slavery or involuntary servitude, except as a punishment for crime.

The power conferred upon Congress by the Constitution concerning these rights, in some instances, as under the fourteenth amendment, is corrective merely of invasion of them by state law or authority. Under other provisions, as under the thirteenth amendment, the power of Congress is full, primary, and direct, authorizing not only the annulment of state laws antagonistic to the right secured, but extending as well to legislation for the protection of the right, and punishment of individuals who transgress its laws on the subject. It deals with things, not merely with names. Prigg v. Pennsylvania, 16 Pet. 539, 10 L. Ed. 1060. "It is clear that this amendment, besides abolishing forever slavery and involuntary servitude, gives power to Congress to protect all persons within the jurisdiction of the United States from being in any way subjected to slavery or involuntary servitude, except as a punishment for crime, and in the enjoyment of that freedom which it was the object of the amendment to secure." United States v. Harris, 106 U. S. 540, 1 Sup. Ct. 610, 27 L. Ed. 290. Under this amendment Congress has the undoubted power to deal not only with the laws which seek to accomplish the forbidden ends, but also with acts of individuals which bring about the same result. Peon-

age Cases (D. C.) 123 Fed. 671; Slaughterhouse Cases, 16 Wall 36, 21 L. Ed. 394.

The Supreme Court recently declared:

"To leave to the several states prosecutions of conspiracies to prevent citizens enjoying the privileges granted or secured by the Constitution of the United States would tend to defeat the supremacy and independence of the national government. As said by Chief Justice Marshall in McCullooch v. Maryland [4 Wheat. 316, 4 L. Ed. 579], and cannot be too often repeated, no trace is to be found in the Constitution of an intention to create a dependence of the government of the Union on those of the states for the execution of the great powers assigned to it. Its means are adequate to those ends, and on those means alone was it expected to rely for the accomplishment of its ends. To impose on it the necessity of resorting to means it cannot control, which another government may furnish or withhold, would render its course precarious, the result of its measures uncertain, and create a dependence on other governments which might disappoint its most important designs, and is incompatible with the language of the Constitution." 158 U. S. 537, 15 Sup. Ct. 961, 39 L. Ed. 1080.

If, therefore, the citizen is obstructed or intimidated by the lawless acts of individuals in the "free exercise or enjoyment of any right or privilege secured to him by the Constitution and laws of the United States," Congress may make such acts crimes against the United States, and punish them in its courts. Section 5508 of the Revised Statutes [U. S. Comp. St. 1901, p. 3712] is a lawful exercise of the authority of Congress to that end. It is to be borne in mind, however, that "the protection of this section extends to no other right— to no right or privilege dependent on a law or laws of the states. Its object is to guaranty safety and protection to persons in the exercise of rights dependent on the laws of the United States, including, of course, the Constitution and treaties, as well as statutes, and it does not, under this section, at least, design to protect any other right." United States v. Waddell, 112 U. S. 79, 5 Sup. Ct. 36, 28 L. Ed. 673.

The right or privilege here involved is not granted in terms to any citizen of the United States by any provision of the Constitution. Its exercise is not necessary to the enjoyment of any right or privilege which the Constitution does specify and confer. It does not result from relations of citizens of the United States to the government of the United States, as needful or proper to the discharge of any duty the citizen owes it. Its protection is not essential to the supremacy of the general government over any matter committed to it by the Constitution, nor is its enforcement a proper means to any end which the Constitution ordained the government of the United States to accomplish. The right has not been assailed or invaded under any state law or by any state authority, or on account of race, color, or previous condition of servitude, or in any other way than by the acts of lawless individuals. How, then, can such an offense fall within the criminal jurisdiction of the courts of the United States?

The Constitution of the United States, as we repeat, left the power and duty to protect life, liberty, property, the pursuit of happiness, freedom of speech, the press, and religious liberty, and the right to order persons and things within their borders, for the protection of the health, lives, limbs, morals, and peace of citizens, save as the original power of the states over them might be disturbed or de-

stroyed by the specific grants of power to the general government, where the Constitution found them—in the exclusive keeping and power of the state—and denied the general government any responsibility for or power over them. Rights like these do not arise from the Constitution of the United States, and are in no wise dependent upon it. Provisions of the Constitution which refer to rights like these are merely in recognition of rights which existed before the government of the United States was formed, in abdication of power in the general government to interfere with or invade them, and in some instances intended as a breakwater against their invasion by state power. As said in United States v. Cruikshank, 92 U. S. 553, 23 L. Ed. 588:

"The very highest duty of the states when they entered into the Union under the Constitution was to protect all persons within their boundaries in the enjoyment of those unalienable rights with which they were endowed by their Creator. In these respects, as regards the particular right here involved, the recent amendments to the Constitution have made no change in the power or duty of the general government. The fourteenth amendment, which prohibits a state from depriving 'any person of life, liberty or property without due process of law,' adds nothing to the rights of one citizen against another. but simply furnishes additional guaranties against any encroachment by the states upon the fundamental rights which belong to every citizen as a member of society." United States v. Cruikshank, 92 U. S. 554, 23 L. Ed. 588.

In that case it was further said:

"Within the scope of its powers as enumerated and defined, the government of the United States is supreme and above the states, but beyond it has no existence. It was erected for special purposes, and endowed with all power for its preservation and the accomplishment of the ends the people had in view. It can neither grant nor secure to its citizens any right or privilege not expressly or by implication placed under its jurisdiction."

If, as contended by the government, Congress has power to punish conspiracies to prevent the exercise of rights like that here invaded, it has equal power to punish individual acts having the same end in view. It could invade the whole domain of the municipal codes of the states, and punish every act of lawless violence directed against the enjoyment of any right concerning life, liberty, and property, or the pursuit of happiness. The authority and duty of the states in the premises would be transferred to the federal government, whenever it legislated as to them, and violations of its laws as to such rights were punished in its courts; and that government, contrary to the design of the Constitution of the United States, would have at least concurrent jurisdiction with the state governments in prescribing and punishing offenses against rights whose protection was never committed or intended to be committed to the United States, but, on the contrary, expressly left to the power of the states. Civil Rights Cases, 109 U. S. 3, 3 Sup. Ct. 18, 27 L. Ed. 835; Slaughterhouse Cases, 16 Wall. 36, 21 L. Ed. 394; United States v. Cruikshank, 92 U. S. 550, 23 L. Ed. 588.

All who value the blessings of justice administered without respect of persons, and who love liberty regulated by law, will share in the regret that acts like those disclosed in the indictment can happen in our midst, and that apprehension exists that the right here claimed, which is dependent solely upon the laws of Alabama, will not be vin-

dicated and enforced in the tribunals of this state. Whether these apprehensions be well or ill founded, it would be a less evil to society to leave the wrong unredressed than to usurp jurisdiction to punish the offenders here.

As the acts charged cannot constitute an offense against the laws of the United States, the demurrers will be sustained, and an order will be entered that the defendants go hence without day.