[Civ. No. 1281. Third Appellate District.—September 26, 1914.]

## SACRAMENTO ORPHANAGE AND CHILDREN'S HOME (a Corporation), Petitioner, v. JOHN S. CHAMBERS, as State Controller, Respondent.

ORPHAN ASYLUMS—ALIEN PARENTS—SUPPORT OF CHILDREN—STATE AID—MANDAMUS.—An orphan asylum is entitled to state aid, and may enforce it by *mandamus* against the state controller, for the support of a native-born orphan child of alien parents who have never become citizens but have resided in the state though not for at least three years prior to the application for aid, as provided by section 2289 of the Political Code.

ID.—DISCRIMINATION AGAINST ALIENS—CONSTITUTIONAL LAW.—The provision of section 2289 of the Political Code "that no child whose parent or parents have not resided in this state for at least three years prior to the application for aid, or whose parent or parents have not become citizens of the state, shall be deemed a minor orphan, half-orphan, or abandoned child within the intent and meaning of this chapter," is not in contravention of section 1 of amendment XIV of the constitution of the United States that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States," but it is obnoxious to section 21 of article I of the constitution of California that no "citizen, or class of citizens, shall be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens."

ID.—PRIVILEGES AND IMMUNITIES OF CITIZENS—FOURTEENTH AMENDMENT.—The privileges and immunities of citizens of the United States, protected by the fourteenth amendment, are privileges and immunities arising out of the nature and essential character of the federal government, and granted or secured by the constitution.

ID.—PRIVILEGES AND IMMUNITIES—DEFINITION OF TERMS.—The word privilege, in common acceptation, means some immunity or advantage; it is a particular and peculiar benefit or advantage enjoyed by a person, company, or class beyond the common advantage of other citizens. The words privileges and immunities are synonymous or nearly so.

ID.—STATE AID OF ORPHANS—WHETHER CONSIDERED AS CHARITY.—State aid of orphan asylums, under section 2283 of the Political Code, is not to be regarded as a charity, or benevolent gift, but the fulfilment of a legal and moral obligation growing out of the duties and privileges of citizenship.

APPLICATION for a Writ of Mandate to be directed to the State Controller.

The facts are stated in the opinion of the court.

White, Miller, Needham & Harber, Edward F. Moran, and W. H. Barrows, for Petitioner.

U. S. Webb, Attorney-General, and John T. Nourse, Deputy Attorney-General, for Respondent.

BURNETT, J.—This is an application for a writ of mandate to secure the payment of a claim for the support of a minor orphan.

After setting forth that, from the first day of July, 1913, to the twenty-second day of May, 1914, the Sacramento Orphanage and Farm Association was a corporation, and an institution conducted for the support and maintenance of minor orphans, half-orphans and abandoned children, and that during the same period the Sacramento Children's Home was a like institution and conducted for like purposes, and that, on said May 22d, the said organizations duly consolidated and became vested with all the rights, duties, and powers of said component associations and succeeded to and became vested with all the property thereof, the petition proceeds: "That for a period of six months immediately prior to the 31st day of December, 1913, that is to say, from the 1st day of July, 1913, to the 31st day of December, 1913, Sacramento Orphanage & Farm Association did have in its care custody and control one Domeric Juryvich, a minor half-orphan under the age of fourteen years, to wit, of the age of seven years or thereabouts; that the parents of said minor half-orphan were aliens and had never become citizens of the United States or of the state of California. That the mother of said minor is dead; that the father of said minor, if alive, would have been a resident of the state of California for more than three years prior to the 1st day of July, 1913; that on August 25, 1912, the father of said minor left Sacramento to visit his native country, intending to return to the state of California; that petitioner is informed and believes that said father of said minor died on the journey to his native country; that said minor was born in the state of California and at the time of his birth his parents were residents of the state of California and continued to be residents of said state up to the time of their death." Then follow allegations as to the proper presentation of petitioner's claim for $37.50 and its approval by the board of control, the availability of sufficient funds in

the state treasury appropriated by the legislature for the purpose of paying for the support and maintenance of said minor, and the application to respondent for the appropriate warrant and his refusal to draw the same.

The statutory authority upon which petitioner relies is found in section 2283 of the Political Code as amended in 1913 (Stats. 1913, p. 629) as follows: "There is hereby appropriated out of any money in the state treasury not otherwise appropriated, to each and every institution in this state conducted for the support and maintenance of needy minor orphans, half orphans, or abandoned children, and to each and every county, city and county, city, or town maintaining such orphans, half orphans, or abandoned children, or any or all of such classes of persons, aid as follows: For each whole orphan supported and maintained in any such institution, not in excess of one hundred dollars per annum; and for each half-orphan or abandoned child, not in excess of seventy-five dollars per annum."

Such legislation, it may be observed, does not rest its sanction alone upon the general authority of the legislative department of the state government, but it is expressly authorized by section 22 of article IV of the state constitution, as follows: "No money shall be drawn from the treasury but in consequence of appropriations made by law, and upon warrants duly drawn thereon by the controller; and no money shall ever be appropriated or drawn from the state treasury for the purpose or benefit of any corporation, association, asylum, hospital, or any other institution not under the exclusive management and control of the state as a state institution, nor shall any grant or donation of property ever be made thereto by the state; *provided*, that notwithstanding anything contained in this or any other section of this constitution, the legislature shall have the power to grant aid to institutions conducted for the support and maintenance of minor orphans, or half-orphans, or abandoned children, or aged persons in indigent circumstances—such aid to be granted by a uniform rule, and proportioned to the number of inmates of such respective institutions; *provided further*, that the state shall have at any time the right to inquire into the management of such institutions."

Since there is no issue as to the facts set out in the petition herein, there would, therefore, be no difficulty in the way of

granting the relief sought were it not for the following provision of section 2289 of the Political Code, as amended by the said statutes of 1913: "In order that the provisions of this chapter shall not be abused, it is hereby declared: . . . 4. That no child whose parent or parents have not resided in this state for at least three years prior to the application for aid, or whose parent or parents have not become citizens of this state shall be deemed a minor orphan, half-orphan or abandoned child within the intent and meaning of this chapter."

Petitioner herein claims that this particular provision if construed as contended for by respondent is void as opposed to the constitution of the United States and also the constitution of this state. The sections to which petitioner refers are section 1 of amendment XIV of the former and section 21 of article I of the latter. But as to said provision in the federal constitution, that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States," the interpretation by the courts would preclude it from application to the situation here. In *Duncan* v. *Missouri* 152 U. S. 382 [38 L. Ed. 485, 14 Sup. Ct. Rep. 571, it was said: "But the privileges and immunities of citizens of the United States, protected by the fourteenth amendment, are privileges and immunities arising out of the nature and essential character of the federal government, and granted or secured by the constitution"; and in *United States* v. *Moore,* 129 Fed. 632, it is declared: "The question is: Is the right or privilege claimed granted in terms by any provision in the constitution, or so appropriate and necessary to the enjoyment of any right or privilege which the constitution does specify and confer upon citizens of the United States as to arise by necessary implication." The subject is also considered and discussed in the *Slaughter House Cases,* 16 Wall. (U. S.) 36, [21 L. Ed. 394] ; *United States* v. *Cruikshank,* 92 U. S. 542, [23 L. Ed. 588] ; *Barbier* v. *Connolly,* 113 U. S. 27, 28 L. Ed. 923, 5 Sup. Ct. Rep. 357] ; *In re Kemmler,* 136 U. S. 436, [34 L. Ed. 519, 10 Sup. Ct. Rep. 930], and other decisions of the highest court of the country.

The Slaughter House cases especially received the most deliberate consideration, and the court announced the rule to be that "the privileges and immunities of citizens of the United States are those which arise out of the nature and es-

sential character of the national government, the provisions of its constitution or its laws and treaties made in pursuance thereof; and it is these which are placed under the protection of Congress by this clause of the 14th amendment.''

Of course, it is difficult, if not impossible, to draw with precision a line which will separate all the privileges and immunities of the citizens of the United States from those of the citizens of the state as such, but it is entirely clear that no provision of the constitution of the United States forms the basis or affords legal sanction for the aid and assistance in question in this controversy. The privilege or benefit herein involved does not grow out of nor does it have any relation whatever to any grant of right or power by the federal constitution. It is purely a state question involving only the construction of the said legislative enactment and of the fundamental law of this state. It is similar in principle to the provisions made for the education of the children of the state at public expense. As to that privilege it was said, through Chief Justice Wallace, in *Ward* v. *Flood*, 48 Cal. 36, [17 Am. Rep. 405]; ''It will be readily conceded that the privilege accorded to the youth of the state, by the law of the state, of attending the public schools maintained at the expense of the state, is not a privilege or immunity appertaining to a citizen of the United States as such; and it necessarily follows, therefore, that no person can lawfully demand admission as a pupil in any such school because of the mere *status* of citizenship.'' This statement was directed to the contention of petitioner therein that by virtue of said 14th amendment of the federal constitution a citizen of the United States must be accorded the same privileges of admission to the public schools here as is granted to a citizen of this state. Other instances of special favors allowable to citizens of a state could be suggested but sufficient has been said as to this branch of the case.

But the contention of petitioner that said discrimination is obnoxious to section 21 of article I of the state constitution is assuredly entitled to more serious consideration. That section provides: ''No special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the legislature; nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens.''

The child for whose support aid is herein sought is a citizen of this state. He was born in this state while his parents were residents thereof. It is undoubtedly true, as stated by respondent, that "Every child born here is a citizen of the state if its parents are residents of the state. Thus, a child born here, whether its parents are citizens or aliens immediately becomes a citizen of the United States, but its second citizenship follows the residence of its parents." The child is and was an orphan under the age of fourteen years and was cared for by such an institution as is contemplated by said statute providing for state aid. What is the basis, then, for discrimination between him and other citizens who are orphans under the age of fourteen years and under the care of the same or of similar institutions? Is it any quality or condition affecting him personally, that would make such classification reasonable and just? Is there any "natural intrinsic or constitutional distinction" differentiating him from the other minor orphan citizens who are receiving and who are entitled to receive state aid? The answer, of course, must be in the negative. The distinguishing quality or condition relates not to him but to his parents. It would be a strange construction of the constitutional provision that would permit privileges to be conferred upon one citizen of the state and withheld from another for the reason that there was a difference in the political *status* of the parents. Mentally, morally, and physically, no doubt, the sins and infirmities of the parents are often visited upon their descendants, but in the realm of civil and political rights and privileges no such principle can be recognized or tolerated. To affirm the proposition contended for by respondent, that one citizen *is,* and another *is not* entitled to this privilege in consequence of the difference in the citizenship and residence of their parents is to deny all efficacy to the constitutional mandate that privileges and immunities must be granted to *all citizens* upon *the same terms.*

The purpose of the legislature is unquestionably a commendable one, but it must be accomplished in a legal and constitutional manner. Restrictions affecting all citizens alike might be imposed which would prevent abuse of the privilege and which would be open to no valid objection.

If the condition of residence or of citizenship related to the minor orphan himself it probably could be said that the

classification was just and reasonable and within the purview of the constitution. No doubt the legislature might require the beneficiary to be a citizen of the state and a resident therein for a certain period. If he were not a citizen, said constitutional provision could not, of course, be invoked, and three years might not be an unreasonable requirement as to residence. There would thus be presented in the condition and *status* of the minor a just basis for valid discrimination. But that is entirely different from the requirement here as to the citizenship and residence of the parents. The injustice of the rule contended for could not be more impressively illustrated than in the present instance. If said provision as thus understood is to be enforced no aid can ever be granted to said minor for the reason that death has rendered it impossible for either of his parents to become a citizen or resident for the requisite time. No such arbitrary and extraneous discrimination is sanctioned by our fundamental law.

In the foregoing, we have manifestly assumed that a *privilege* or *immunity* within the contemplation of said constitutional provision is involved in this controversy. However, as to this, there may be some ground for difference of opinion.

The word *privilege,* in common acceptation, means some immunity or advantage. (*Moore* v. *Fletcher,* 16 Me. 63, [33 Am. Dec. 633].)

A privilege is a particular and peculiar benefit or advantage enjoyed by a person, company, or class beyond the common advantage of other citizens. (*Guthrie Daily Leader* v. *Cameron,* 3 Okl. 677, [41 Pac. 635].)

In its natural meaning, the word privilege may be defined as a right peculiar to an individual or body. (*Ripley* v. *Knight,* 123 Mass. 515.)

The words *privileges* and *immunities* are synonymous or nearly so; and privilege signifies a peculiar advantage, exemption, immunity, and *immunity* signifies exemption, privilege. (*Van Valkenburg* v. *Brown,* 43 Cal. 43, [13 Am. Rep. 136].)

Of course, it is not every special favor that may be regarded as a privilege or immunity in the sense of this constitutional provision, but the appropriation of public money would seem clearly to be within the letter and spirit of the expression used. The support and comforts of a home afforded the or-

phan by these benevolent institutions constitute a peculiar benefit or advantage to the recipients, as probably no one would deny. While the aid is not extended by the state directly to the orphan, half-orphan or abandoned child, it is for his benefit, and there can be no difference in principle because the money is appropriated to and used by the intermediary. The essential thing is that it is for the benefit of the dependent. To the extent of applying this money to the beneficent purpose of the law the institution becomes an agent of the state, and it may be said that the statute provides regulations and safeguards to guarantee the faithful discharge of the stewardship.

If it should be said that the terms, *"privileges* and immunities"* apply only to rights and benefits that are of constitutional origin, petitioner may still assert its claim on the ground that the duty of the state to aid these helpless minors is affirmed or, at least, recognized in the constitution itself (art. IV, sec. 22), and the legislature is expressly authorized to make the necessary appropriations.

With much plausibility also it might be contended that to give effect to the clause here in controversy as construed by respondent would be in violation of that mandate of said section 22 of article IV, that the aid extended to such institutions must be "granted by a uniform rule, and *proportioned to the number of inmates* of such respective institutions." It could hardly be said that this requirement is observed if some of the orphans or half-orphans who are inmates of such institutions are excluded in making the appropriation.

There is, however, some contention made—worthy of brief notice—that the subject matter in dispute involves a donation or charity and that a donation or charity is not within the constitutional inhibition. It is declared that "the aid extended by sections 2283-2289 of the Political Code is not given in the exercise of any governmental function or constitutional mandate, but is merely a contribution to a private charity under the constitutional permission. No vested right attaches to the grant of aid. 'No pensioner has a vested right to his pension. Pensions are bounties of the government, which Congress has the right to give, withhold, distribute or recall at its discretion.' (*United States* v. *Teller,* 107 U. S. 68, [27 L. Ed. 352, 2 Sup. Ct. Rep. 39].)"

Even under this conception of the appropriation, however—whatever may be the rule as to the power of Congress or the authority of the legislatures of other states—no such discrimination could be made by our legislature in view of said constitutional prohibition. If it be regarded in the nature of a charity, it would be no less an invidious distinction made between citizens sustaining the same relation to the law.

But the appropriation is not to be regarded in the light of a charity proceeding from merely generous or equitable considerations such as might move a kindly disposed individual to extend a helping hand to one in need of assistance. The modern trend and development of civic ideas is no more emphatically shown than in the unmistakable recognition and expression by statutory and constitutional provisions of the duty of the state to afford assistance and support to the citizens who are not able to support themselves. Whatever may be the condition in other and less advanced countries, the health, comfort, and security of the individual as well as the protection of his property are justly regarded here as proper subjects of legislative promotion. It is the state's duty as the representative of the strong to bear and relieve "the infirmities of the weak." This task cannot be relegated entirely to individual philanthropy. There is no place in our sociology or scheme of government for the brutal philosophy of Nietzsche that "the weak and helpless must go to the wall; and we shall help them to go." The state may honor and glorify the strong and powerful but it recognizes its duty to assist and champion the weak and helpless. This is rightly considered not as a benevolent gift but the fulfillment of a legal and moral obligation growing out of the duties and privileges of citizenship.

It would seem that the only debatable question is whether said provision of the act can be construed so as to harmonize with the constitution, or, if not, whether with the provision eliminated there is any legislative authority left for this appropriation. The duty of the court is, of course, plain and well settled, *to sustain,* if possible, any enactment of the legislature, and if compelled to declare any portion of an act invalid, to save the balance if it can be done.

"Constitutions like statutes and private instruments must be so construed if possible as to give some force and effect to each of their provisions. The legal intendment is that each

and every clause has been inserted for some useful purpose, and when rightly understood may have some practical operation. For the purpose of harmonizing apparently conflicting clauses, each must be read with direct reference to every other which relates to the same subject, and so read, if possible, as to avoid repugnancy, and to that end sections, paragraphs and sentences may be transposed; elegance of composition may be sacrificed; and the meaning of words and phrases may be upheld or enlarged." (*French* v. *Teschemaker,* 24 Cal. 540.)

It is urged by petitioner that if we apply this principle and regard the whole of the act and the evident purpose of the legislature, keeping in mind that an attempt to observe the requirement of the constitution must be presumed, we should read the clause as follows: "No child not born in this state whose parent or parents have not become citizens of this state or whose parent or parents have not resided here for three years shall be deemed a minor orphan," etc. As thus construed the law would it is claimed be reasonable and just and not obnoxious to said constitutional provision.

But we do not deem it necessary to decide whether this construction is permissible.

We are satisfied that respondent's position cannot be maintained and that one of the three following theories must be adopted, to wit: That the clause should be construed as advocated by petitioner, or that it should be held void and the remainder of the act upheld, or if that be not possible, then the act in force prior to and at the time of the enactment of the said amendment should be considered as still operative. Upon any of these theories petitioner is entitled to prevail.

We think the peremptory writ should issue and it is so ordered.

Chipman, P. J., and Hart, J., concurred.