LILLIAN M. HOBART *vs.* BRADFORD WESTON & others.

Plymouth.　November 19, 1915. — March 2, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Nantasket Beach. Boundary. Evidence,* Plans. *Words,* "Extended."

A certain strip of land at Nantasket Beach in the town of Hull between the eastern side of Franklin Street and the ocean is free from a restriction prohibiting the erection of any structures thereon, except the portion of such strip of land which is on the easterly side of Beach Avenue, and that avenue extends southerly to the line of the southerly side of Quincy Street produced, the part of the premises between Beach Avenue and the ocean being subject to the restriction that no building or structure shall be placed or erected thereon and that it "shall be forever kept open and unobstructed for public use and enjoyment."

A boundary which was a part of the description of a parcel of land in a deed and was designated as running "by the southerly line of" a certain street "extended," was held properly to have been found not to indicate that the street itself existed at the place of the extended line but merely to describe the line that would exist if the street should be extended at that place.

It is within the discretionary power of a presiding judge to refuse to admit in evidence a plan which he finds to be imperfect. In the present case the plan excluded, if it had been a proper one, would in no way have been material to the issues being tried.

PETITION, filed in the Land Court on June 25, 1913, for registration of the petitioner's title to a strip of land at Nantasket Beach in the town of Hull lying between the easterly line of Franklin Street and the ocean and including the beach and flats to low water mark.

The case was heard by *Corbett,* J., whose rulings and findings are stated in the opinion. He made the decree there described; and the respondents alleged exceptions.

On page 163 is printed a reduced copy of the material part of the 1885 plan of the lands of the Nantasket Company which is mentioned in the opinion. In this copy the figures giving the dimensions of the lots and the number of square feet are omitted for the sake of simplicity.

*T. H. Buttimer,* for the respondents.

*C. L. Newton,* (*G. E. Curry* with him,) for the petitioner.

CARROLL, J. 1. This is a petition to register the title to a parcel of land situate between Franklin Street and low water mark on the ocean in the town of Hull. A decree was entered for the petitioners subject to the rights of the public below mean high water mark, and also subject to all rights legally existing in the town of Hull, referred to in St. 1811, c. 56. See *Ripley* v. *Knight,* 123 Mass. 515. The case is before us on the exceptions of the respondents.

In 1881 the Nantasket Company, a voluntary association, owned a large tract of land extending substantially from the Ocean House on the south, in that part of Hull known as Surfside, to Allerton Hill on the north, from the ocean on the east to the bay on the west. The Nantasket Company prepared a plan showing the tract divided into lots with streets and avenues. This plan was in sections, one showing substantially the northerly half and the other the southerly half of the tract. These sections were

dated 1881 and 1885, respectively, and were recorded in the
Plymouth registry of deeds before June 21, 1886.

Beach Avenue was shown in the 1881 and 1885 plans, extend-
ing along the upland on the ocean front; no lots were shown
on the plans on the easterly side of Beach Avenue, that is to say,
between Beach Avenue and the ocean. The lots shown in the 1881
plan were numbered from 1 to 1237, inclusive, and the lots in the
1885 plan were from 1238 to 1815, inclusive. The title to the land
shown on these plans, including the locus, remained in the Nan-
tasket Company until 1886, when the land, including that lying
on the ocean front and not divided into lots, was advertised for
sale at public auction under a decree of the court, the sale to begin

June 21, 1886, and continue until the entire holdings of the Nan-
tasket Company were disposed of.

The advertisement of the sale published at the time, copies of
which were circulated at the sale, contained this statement:
"All lots sold on the Easterly side of Beach Avenue will be con-
veyed subject to the express condition that no building or struc-
ture of any kind or nature whatsoever shall ever be placed or erected
thereon or on any part thereof, but that the same shall forever
remain open and unobstructed for public use and enjoyment."
The land lying between Beach Avenue and the ocean, opposite the
lots on the westerly side of Beach Avenue, was sold at this time,
and each deed contained the same restriction stated in the adver-
tisement. All the deeds referred either to the plan of 1881 or that
of 1885. At this sale in August, 1886, John Shepard became the
purchaser of all the premises in the locus sought to be registered,
except that portion of the beach and upland lying between the
north and south lines of Quincy Street and the north and south
lines of Otis Street, extended, to low water mark. This portion

of the land between the lines of Quincy Street extended and Otis Street extended, was purchased at a sale by Eben D. Jordan, to whom was conveyed all the remaining land of the Nantasket Company. The deed to Shepard was subject "to the express condition that no building or structure of any kind or nature what-soever shall be placed or erected thereon or on any part thereof, but the same shall be forever kept open and unobstructed for public use and enjoyment." The deed to Jordan contained the recital that so much of the premises as were between Beach Avenue and the ocean were subject to this restriction. The two parcels between the lines of Quincy and Otis streets, extended, passed by mesne conveyance to the petitioner, and these deeds were subject to the stipulation contained in the deed to Jordan. The title to the remainder of the locus is in the petitioner under mesne conveyances from Shepard. All these mesne conveyances of the parcel originally conveyed to Shepard were also subject to the same conditions and reservations, as stated in the original deed to Shepard.

In 1912 Andrew F. Reed, sole surviving trustee of the Nantasket Company, undertook to convey to the petitioner the parcels described in the deed to Shepard, the deed to Reed stating that the condition, that no building should ever be erected on the premises contained in the deed to Shepard, was inserted by accident and mistake. Subsequently Reed and the petitioner brought a petition in the Supreme Judicial Court, naming the Attorney General and the Commonwealth as the sole respondents, alleging a mistake in the conveyance to Shepard and praying for its reformation. In September, 1914, the deed was reformed by striking out the condition and ordering that "said deed shall be held construed and regarded as having conveyed the estate free from said condition."

The respondents are owners of lots on the north of the locus. They contend that Otis and Quincy streets and Beach Avenue extend across or into the locus and that the portion of the premises on the ocean front easterly of Beach Avenue so extended, must be registered subject to the restriction "that no building or structure of any kind or nature whatsoever shall be placed or erected thereon or any part thereof, but the same shall be forever kept open and unobstructed for public use and enjoyment."

The petitioner contends that her land extends to the northerly line of Quincy Street, extended, as her boundary on the north; that Beach Avenue does not extend on the south beyond this line and does not extend over her lot; that the condition prohibiting the erection of buildings applies only to land on the easterly side of Beach Avenue, and that Otis and Quincy streets extend no farther east than Franklin Street, which is her boundary on the west, and that they do not cross her land.

It is not disputed that the conveyance to the respondents gave them the right to an open space between Beach Avenue and the ocean, the easterly side of the avenue being restricted in its use so that no buildings or structures should be erected thereon. *Attorney General* v. *Onset Bay Grove Association,* 221 Mass. 342. *Hobart* v. *Towle,* 220 Mass. 293. *Massachusetts Institute of Technology* v. *Boston Society of Natural History,* 218 Mass. 189. *Whitney* v. *Union Railway,* 11 Gray, 359. The stipulations in the various deeds impose no such restriction except upon the land situate upon the easterly side of Beach Avenue, with the exception stated in the deed from the Nantasket Company to Shepard.

The Land Court found that Beach Avenue ends at the southeast corner of lot 1769, or at the northerly line of Quincy Street extended. There was no evidence showing how far to the south Beach Avenue was used for travel, nor is there anything showing the layout of the avenue. The deeds to the purchasers make no reference to its extent. All the deeds, however, refer to the plans of 1881 and 1885. These plans show that Beach Avenue ends at the southerly line of Quincy Street extended, the line marking the easterly boundary of the avenue extending south to a point where it meets the southerly line of Quincy Street extended. If this last mentioned line appeared on the plan, it would be plain that Beach Avenue extended thereto. And even without this continuation of the Quincy Street line, we see no reason why the line of the avenue was carried to this point, except for the purpose of showing its southerly extension. This boundary line of the avenue was inserted to show its width and extent, and, as we construe the plans, Beach Avenue does not end at the northerly line of Quincy Street, but does end at the southerly line of that street extended. These plans show that the locus was not divided into

lots, as was the remaining property of the grantor on the west of Beach Avenue, and there is nothing on either plan showing the avenue extending over or into any part of the petitioner's estate, except that portion lying between the north and south lines of Quincy Street extended. A reference to the plan shows that Beach Avenue in location and extent was as there shown and outlined. We think the Land Court was right in deciding that the conditions or restrictions had reference only to the land on the easterly side of Beach Avenue.

2. The deed to Shepard from the Nantasket Company makes no reference to Beach Avenue. So far as the record shows, the only land purchased by him from the Nantasket Company was the two parcels described in this deed, and, according to its language, he could place no building or structure thereon, or on any part thereof. Still, there is nothing in this language which imposes a restriction on this land for the benefit of the estates of the respondents (*Clapp* v. *Wilder*, 176 Mass. 332), although all the land purchased from the Nantasket Company by Shepard was thus restricted. In a sale extending over such a length of time and referring to so many lots, it is not difficult to see how by mistake or accident such a restriction was inserted, which rendered his land of little if any value to him. Even if there was no mistake there is nothing in the terms of the grant to show, "from the situation and surrounding circumstances, that it was the intention of the grantor in inserting the restriction to create a servitude or right which should enure to the benefit of" the respondents' land, or should be annexed as an appurtenance (*Beals* v. *Case*, 138 Mass. 138, 140), the only restriction enuring for the benefit of the respondent's land being that referring to Beach Avenue.

Neither was there any dedication of this land to the public under the clause "to be forever kept open and unobstructed for public use and enjoyment." See *Attorney General* v. *Vineyard Grove Co.* 211 Mass. 596; *Boston Water Power Co.* v. *Boston,* 127 Mass. 374; *Pearson* v. *Allen,* 151 Mass. 79; *Attorney General* v. *Whitney,* 137 Mass. 450; *Bowers* v. *Suffolk Manuf. Co.* 4 Cush. 332. And there is nothing in *Attorney General* v. *Abbott,* 154 Mass. 323, in conflict with what is said here.

3. The deed to Jordan conveyed all the remaining estate belonging to the Nantasket Company. It contained the recital that

so much of the premises as were between the ocean and Beach Avenue were subject to the same reservation before mentioned as did the deed from Jordan to Shepard which transferred the title to the land between the lines of Otis and Quincy streets, extended. As Beach Avenue did not extend as far south as these streets extended, except in the case of Quincy Street above referred to, the respondents cannot insist upon a reservation in the grants which were not for the benefit of their estates; what we have said before in considering the extent of this avenue and the restrictions applies to the grant from Jordan to Shepard.

4. The deed conveying lot 1769 to Elijah A. Marsh, through whom the respondent Bradford Weston derives title by mesne conveyance, described the premises as bounded southerly by the northerly line of Quincy Street extended, 49.80 feet. In the deed to Shepard, one parcel is bounded by the southerly line of Otis Street extended easterly to low water line and by the northerly line of the Ocean House estate extended. The other parcel is bounded by the southerly line of Quincy Street, extended; from this it is argued that Otis and Quincy streets extend over the locus to the ocean. The judge found against this contention and ruled that the streets were not extended by the language of the deed; that the words used were used in the same sense as the words, "line of Ocean House estate extended" were used, not to show that the streets went beyond Franklin Street, but merely to show where the lines would fall on the ground, if the streets were thus extended. On the plans these streets do not pass over the land of the petitioner, the title to which is sought to be registered. We see no error in this finding.

5. The respondents offered a plan made in 1878 by the predecessor in title of the Nantasket Company. The judge declined to receive it. This plan was known as the South Commons plan. It was recorded in the registry of deeds for Plymouth. It showed Beach Avenue running north and south along the ocean and two streets called Twenty-sixth and Twenty-seventh streets. The respondents offered to show that Twenty-sixth Street, as shown on this plan, was in the same location as Quincy Street shown on the plan of the Nantasket Company. The judge found that the plan offered did not show a subdivision of the locus, that Twenty-sixth and Twenty-seventh streets did not coincide with Quincy

and Otis streets. This was a question of fact. As stated by Mr. Justice Lathrop, in *Whitman* v. *Shaw*, 166 Mass. 451, 458: "It is undoubtedly true that a plot, map, or plan may be so imperfect that the judge presiding at the trial may be justified in declining to admit it." Even if the judge was wrong in this finding, or in the ruling excluding the evidence showing the location of Twenty-sixth and Quincy streets to be the same, there was no evidence that the plan of the South Commons did show Beach Avenue extending through the locus. No reference was made to this plan at the time of the sale, nor in the deeds to the various respondents. They received their title under deeds which specifically referred to the plans of 1881 and 1885, and these plans showed Beach Avenue extending only to the southerly line of Quincy Street extended. Under the facts disclosed in this record, the rights of the parties cannot be affected by what a former owner may have contemplated, even if it was his intention to extend Beach Avenue along the ocean in front of the premises he then owned.

The conclusion as to points 1 and 2 of this opinion is by a majority of the court. The decree of the Land Court should be modified, by showing that Beach Avenue extends to the southerly side of Quincy Street extended, and that the portion of the locus on the easterly side of Beach Avenue, thus extended, is subject to the restrictions mentioned, and, so modified, the order for the decree is affirmed.

*So ordered.*